### FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

### Rafael BARRERA, his wife Alma Barrera and the conjugal partnership constituted by, Defendants.

Civ. No. 84-0824(TR).

United States District Court, D. Puerto Rico.

Oct. 11, 1984.

---

Arturo A. Vera Rojas, F.D.I.C., San Juan, P.R., for plaintiff.

## OPINION AND ORDER

TORRUELLA, Chief Judge.

This action is before us on Defendants' Motion for Summary Judgment. Defendants also filed a memorandum in support of a Motion for Summary Judgment and an affidavit signed and sworn by Codefendant Rafael Barrera on July 12, 1984.

The Court has jurisdiction in this action because it arises under the Laws of the United States of America, pursuant to 12 U.S.C. § 1819 and 28 U.S.C. § 1345.

The Federal Deposit Insurance Corporation (hereinafter referred to as FDIC) sued Rafael Barrera, Alma Barrera (husband and wife) and their "legal conjugal partnership" to collect the principal and interest due on various promissory notes executed by two corporations, Constructora Guayanés, Inc. (Guayanés), and Las Aguilas Development Corp. (Las Aguilas), in favor of Banco Crédito y Ahorro Ponceño (hereinafter Banco Crédito) and guaranteed thereof, jointly, severally, or *in-solido* by Defendants by two previously signed guarantee contracts.

On August 22, 1969, Rafael Barrera and Alma Barrera executed a document of

guarantee to Banco Crédito, jointly and severally guaranteeing loans to Las Aguilas for up to $1,353,000.00, against periodic request for loans, each loan being evidenced by a promissory note of Las Aguilas payable on demand to the order of Banco Crédito. Thereafter, on February 26, 1970 Rafael Barrera, signing singly, executed another document of guarantee in favor of Banco Crédito for the amount of $100,000. Mr. Barrera was also a co-issuer of Guayanés' obligations, which date back to the period of 1968–70. Las Aguilas' notes and obligations pertinent herein were undertaken from 1968 to 1973.

The FDIC, in its corporate capacity, purchased the above referred notes and guarantees from the FDIC, the appointed receiver of Banco Crédito, when the Secretary of the Treasury for the Commonwealth of Puerto Rico closed said bank on March 31, 1978 due to its unsound financial condition. 7 L.P.R.A. 201. The dual capacities of Plaintiff in the liquidation of a state insured bank are specifically authorized by 12 U.S.C. § 1821(e) and § 1823(e).

In the present suit the F.D.I.C. demands the payment of the amounts due in relation to the debts of Las Aguilas that were personally guaranteed by Defendants. The F.D.I.C. also seeks the payment of the amounts due in relation to the obligations of Guayanés that were co-issued by Codefendant Rafael Barrera.

Defendants raise as a defense, however, that the transactions which originated the F.D.I.C.'s claims are governed by the Commerce Code of Puerto Rico and thus, they argue, under that Code's three year statute of limitations the period for enforcing the collection of either the notes or the personal guarantees had expired before the filing of the above captioned complaint on March 30, 1984.

▮ The Court notes that the standard for summary judgment requires an inquiry into the merits of the parties' claims. Under Fed.R.Civ.P. 56, the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact. *Warrior*

*Tombigbee Transportation Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); *Impossible Electronics Techniques Inc. v. Wakenhut Protective Systems, Inc.*, 669 F.2d 1026 (5th Cir.1982). Summary judgment should be granted when it is clear what the truth is, and when no genuine issue remains for trial. *National Screen Services Corp. v. Poster Exchange, Inc.*, 305 F.2d 647 (5th Cir.1962). If the record is adequate and there is no genuine factual issue as to any material fact then summary judgment should be rendered as the substantive legal principles warrant. 6 Pt. 2 Moore's *Federal Practice*. See 56–20(2).

On the other hand, while the basic principles underlying summary judgment apply, of course, to a motion based on an affirmative defense, their application may, nevertheless, warrant summary judgment on the basis of the statute of limitations, since this defense, perhaps more so than laches, does not usually involve genuine issues of material facts. When this is true and the defense is legally sufficient, summary judgment should be rendered for the defending party. Moore's *Federal Practice, supra*, Sec. 56.17(58).

▮ At the outset it must be understood that this is an action brought by the FDIC in its corporate capacity; therefore, the questions presented in this action in which the FDIC is a party in such corporate capacity are governed by federal and not state law. *FDIC v. Cardona*, 723 F.2d 132, 134 (1st Cir.1983); *FDIC v. Bird*, 516 F.Supp. 647, 649 (D.P.R., 1981). "With specific respect to the FDIC, when, as in the instant case, it exercises authority granted it under 12 U.S.C., Sec. 1823, and purchases assets from the receiver of a closed insured bank, its rights shall be determined by reference to federal law." *FDIC v. Bird, supra*, at 649, and cases cited therein.

▮ In this action, as in the *Bird* case, *supra*, the court's "task of giving content to the federal law to be applied with respect to the applicable statute of limitations is not difficult." In 1966 Congress

enacted Public Law 89–505, codified at 28 U.S.C. § 2415, which established to the exclusion of the application of any state law, "a federal statute of limitations with respect to every action for money damages brought by the United States or an officer thereof which is founded upon any contract express or implied ...", 28 U.S.C. § 2415(a). The intention of Congress to include federally created corporations such as Plaintiff is clear from the legislative history of the statute. S.Rep. No. 1328, 89th Cong., 2d Sess., reprinted in 1966, U.S.Code Cong. & Ad.News 2502, 2508. Furthermore, it has been held that the "federal statute of limitations is applicable where the agency has acquired its claim by assignment." (Citations omitted). *FDIC v. Bird, supra,* at 650 and cases cited therein. The existence of a clear Congressional intent to establish for the United States and its agencies a statute of limitations with respect to contract claims dictates the result that the provisions of 28 U.S.C. § 2415 be applied to this action. The federal statute of limitations appliable herein is thus six years from the time the right of action accrues. Consequently, FDIC would have had six years from the date of accrual to file this action.

The issue that remains to be determined is that of when FDIC's cause of action accrued.

The mere fact of the acquisition of the claims asserted in this action by the FDIC would not revive any claim which was already time-barred by a Puerto Rican statute of limitations. 516 F.Supp. at 650. On the other hand, as was said in *FDIC v. Cardona,* "when the FDIC purchases the assets of a bank, it should not be barred from bringing an action if a private party acquiring the same assets in the same manner would not be barred", *supra,* at 134. Therefore, the issue, of necessity, is whether the causes of action asserted by FDIC were time-barred by the running of the three-year statute of limitations of the Commerce Code, 10 L.P.R.A. 1908, when it became the holder of both the notes executed by Guayanés and Las Aguilas and the contracts of guarantee signed by Defendants.

 It is settled law that the three-year period of prescription fixed by Article 946 of the Code of Commerce for actions on promissory notes is only applicable to commercial notes, and not to notes in general. *Banco de Puerto Rico v. Rodriguez,* 53 P.R.R. 166 (1938). A non-mercantile note is not subject to the three-year period of limitation fixed by Article 946 of the Commerce Code, but to the fifteen-year term provided by Article 1864 of the Civil Code, 31 L.P.R.A. 5294. *Luengo v. Fernández, 83 P.R.R.* 613, 616 (1961); *Mediterranean Investment Corp. v. Rodríguez,* 575 F.Supp. 268, 269 (1983).

On the other hand, a guarantor is only liable to the extent the person he guaranteed is liable. Indeed, according to Article 1746 of the Civil Code of Puerto Rico, "the obligation of the surety shall expire at the same time as that of the debtor, and for the same causes as all other obligations." 31 L.P.R.A. 4951. Moreover, as stated in the Civil Code, "a joint debtor may utilize, against the claim of the creditor, all the exceptions arising from the nature of the obligation and those which are personal to him." 31 L.P.R.A. 3112. The success of Defendants' argument depends, therefore, on their ability to show that the loans made thereof would be considered "commercial" under Puerto Rican law. *FDIC v. Cardona, supra* at 134.

 In order to establish under Puerto Rican Law the commercial nature of a loan, two conditions must be present: (1) that one of the parties thereto be a merchant, and (2) that the loan be devoted to commercial transactions. Article 229 of the Commerce Code of Puerto Rico, 10 L.P.R.A. 1651; *FDIC v. Cardona, supra; Mediterranean Investment Corp. v. Rodríguez, supra.* It is not sufficient that one of the requirements of Article 229 is found to be present in the obligation in question. *Luengo v. Fernández, supra; FDIC v. Marco Discount House,* 575 F.Supp. 730, 732 (1983). Furthermore, the fact that a bank is one of the lending

parties does not necessarily render the loans "commercial" in nature under the Commerce Code of Puerto Rico. *Banco de Puerto Rico v. Rodríguez, supra* at 433; *FDIC v. Cardona, supra,* at 135. Nonetheless, Defendants have brought forward enough evidence to show the presence of the elements required by said Code to characterize loans as "commercial."

Indeed, as was shown by Defendants, under *Acevedo v. Viñas Sorba,* 111 D.P.R. 633 (1981), Las Aguilas was a promoter in the construction business; that is, a professional who conceived and organized the construction and development of housing projects so that others could acquire, lease, or enjoy them. Thus, it devoted itself to the business of developing or building for others as part of a plan of commercial activity.[1] Guayanés was active both as a promoter and as a general contractor. As a promoter its activities were identical to those of Las Aguilas. As a general contractor, however, Guayanés was in charge of the main portion of the construction work in the development of projects conceived by promoters. Thus, it devoted itself to the business of developing or building for others who, in turn, sold or leased the housing units to the public.

Besides, the notes from Las Aguilas were issued in connection with said corporation's commercial activities and business. The funds borrowed by Guayanés were also used exclusively in connection with said corporation's business; at the time of the issuance of the notes Guayanés was acting as a general contractor of Las Aguilas for site improvement works and for the construction of housing units for sale to the public by Las Aguilas.

As stated by Spanish commentator Manuel de la Cámara Alvarez, it is clear that those involved in the areas of promotion and construction of structures, houses and buildings in the context of the construction industry have to be considered as merchants subject to the regulation of the Commerce Code. *Estudios de Derecho Mercantil,* V.I., Editorial de Derecho Financiero, pp. 38–41. Therefore, the essential circumstances surrounding the issuance of the notes and/or disbursements of loans arouse in the instant case from the commercial operations of Las Aguilas and Guayanés, both of whom were "merchants" within the meaning of said term in the Commerce Code of Puerto Rico.[2]

---

1. Promoters are professional enterprises that operate within the construction industry. As such, they conceive and organize, for others, generally as part of a plan of commercial activity, the construction and development of housing and building projects so that other individuals can acquire, lease or enjoy them. In addition, they also hire the ones who will be responsible for the design or construction of projects, buy the land in which the project will be developed and finally, work out the problems involved in the financial investment that is needed to complete the design, development, and construction of projects. Theirs is thus, the responsibility of carrying out the complex professional, real estate and financial transactions needed for the structuring and sale of housing and building projects. Moreover, it is the promoter the one who assumes the initiative of carrying out this complex economic process. See Cabanillas Sánchez, "Ejecución defectuosa de la Cbra Inmobiliaria—Responsabilidad del Promotor ...", 33 Anuario de Derecho Civil 194 (1980); R. Saint-Alary, *Droit de la Construction,* Presses Universitaries de France, Paris, 1977, p. 303.

2. According to Plaintiff, Defendants were not merchants within the scope of the Commerce Code because they were involved in the construction business. However, nowhere does it say in the Commerce Code that those involved in the construction industry are incapable of being regulated by the provisions of said Code or, further, incapable of being considered merchants by the code in question. Indeed, industrial enterprises are capable of carrying out commercial acts and transactions through their own industrial activities. Moreover, when this is so, the elements required by 10 L.P.R.A. 1002 to consider companies, corporations or associations as merchants for purposes related to the Commerce Code are present.

Much more than the mere construction of a single building is required, of course, for anyone to be considered as a participant engaged in the construction industry. See *Building Maintenance Serv. v. H.R. Exec. Bldg.* 109 D.P.R. 656, 664 (1980). However, both Las Aguilas and Guayanés were actively involved in the construction industry, one as a promoter (the former), the other as a promoter and general contractor. As such, these two corporations served as intermediaries in chains of acts and transactions, whose objective was, basically, to satisfy human housing needs. The enterprises in ques-

■ As to Codefendant Rafael Barrera, it must be said that he, through Las Aguilas and Guayanés, was the moving factor in making one a promoter in the construction business and the other both a promoter and a general contractor. In any case, aside from Mr. Barrera, Banco Crédito was the sole source of funding and loans for both Guayanés and Las Aguilas. As a matter of fact, the contracts of guarantee signed by Defendants allowed Las Aguilas to obtain financing from Banco Crédito. In other words, the guarantees were given to insure the fulfillment of commercial transactions. The execution of the aforementioned guarantees was, then, a commercial act under the Commerce Code, as stated in 10 L.P.R.A. 1821: "All guarantees the purpose of which is to insure the fulfillment of a commercial contract shall be considered commercial, even though the guarantor is not a merchant."

Since more than three years have elapsed since the issuance of each of the notes and/or from the execution of the guarantees pertinent herein, the only remaining question as far as the notes are concerned is whether the period of prescription of three years established by the Commerce Code was in any way interrupted.

In 10 L.P.R.A. 1903 it is provided:

"Prescription shall be interrupted by suit or any judicial proceeding brought against the debtor, by the acknowledgement of the obligations, or by the renewal of the instrument on which the right of the creditor is based.

Prescription shall be considered uninterrupted by a judicial proceeding if the plaintiff should withdraw it or the case should go by default or the complaint be dismissed.

The period of prescription shall begin to be counted again, in case of the acknowledgement of the obligations, from the day this is done; in case of their renewal, from the date of the new instrument, and if the period for meeting the obligation should have been extended, from the date this extension expires."

The F.D.I.C. did not file any judicial action against either Guayanés or Defendants in any way relating to its claims against Guayanés until the filing of the instant complaint. Nor has there been any acknowledgement whatsoever to the F.D.I.C. as to any obligations relating to either Guayanés or Defendants. In addition, there has been no renewal of the instruments on which the F.D.I.C.'s rights as Guayanés' creditor are based.

■ The claims of the F.D.I.C. against Guayanés are thus barred by the applicable statute of limitations. The mere fact of the acquisition of the claims asserted in this action by the FDIC does not revive any claim which is already time-barred by a Puerto Rican statute of limitations. 516 F.Supp. at 650. The claims against Guayanés were, in effect, already time-barred when the FDIC acquired them on 1978, having the acquisition taken place more than three years after the maturity date of the notes. Therefore, the F.D.I.C.'s claims against Defendants as co-issuers with Guayanés are also time-barred and for the same reason. 31 L.P.R.A. 3112.

■ As to Las Aguilas, on September 27, 1972 said corporation filed Chapter 11 proceedings under the Bankruptcy Act and was thereafter duly adjudged a bankrupt by the Court on November 21, 1974. As a general rule, Section 391 of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 791, (repealed) provided that "all statutes of limitations affecting claims provable under this chapter ... shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed." Moreover, in cases commenced by the filing of a Chapter 11 petition while bankruptcy proceedings were pending, limitation of actions was con-

tion were commercial in character and, as such, subject to the applicable provisions of the Commerce Code. See M. Planiol, *Traité Elémentaire de Droit Civil,* V–2–2 Louisiana State Law Institute, 1939, 11th Ed., pp. 140–45; Nueva Enci-clopedia Jurídica Francisco Seix, Editor, Barcelona, T. II, 1950, p. 310; J. Puig Brutau, *Fundamentos de Derecho civil,* T. II, V. II, *infra,* at 446, N. 82; Rodrigo Uria, *Derecho mercantil,* 11th Ed., Madrid, 1975, pp. 31–32.

trolled by Section 11(f) of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 29 (repealed). *Collier on Bankruptcy*, 14th Ed., Vol. 9, Sec. 12.01, pp. 705–06. Said Section 11(f) provided that "the operation of any statute of limitations of the United States or of any State affecting the debts of a bankrupt provable under this Act, shall be suspended during the period from the date of the filing of the petition in bankruptcy (1) until the expiration of thirty days after the date of the entry of an order denying his discharge; or (2) ... in the case of a corporation, if no application for a discharge is filed within the period of six months after the adjudication, then until the expiration of thirty days after the end of such period; or (3) until thirty days after the dismissal of the bankruptcy proceedings, whichever may first occur."

The three-year applicable statute of limitations was thus interrupted in the case of Las Aguilas in the year 1972 until at least seven months after the date of adjudication (seven months after adjudication in November 21, 1974). See *Collier on Bankruptcy, supra*, Vol. 1A, Sec. 11–14, p. 1224. This interruption of the period of limitations against Las Aguilas, the principal debtor, also operated against its surety. *FDIC v. Marco Discount House, supra*. See Article 1875 of the Civil Code of Puerto Rico, 31 L.P.R.A. 5305; see also Article 1874 of the Civil Code, 31 L.P.R.A. 5304. Consequently, the three-year period had not expired when the F.D.I.C. acquired the assets of Banco Crédito on 1978. On that date, the statute of limitations again ceased to run against the F.D.I.C., a federal agency. *FDIC v. Marco Discount House, supra*, and cases cited therein. From that moment the federal statute of limitations, 28 U.S.C. § 2415, was applicable. 575 F.Supp. at 732. Since this action was filed before the six-year period of limitations established in 28 U.S.C. § 2415 had expired, it would not have been barred against Las Aguilas by the applicable statute of limitations as far as most of the notes pertinent herein are concerned.

■ Section 11(f) of the Bankruptcy Act of 1898 referred only to claims not already time-barred when bankruptcy petitions were filed. Collier on Bankruptcy, Vol. 1A—*supra*. Hence, said Section did not operate to extend the limitations period where the period set by applicable state law had already expired before the filing of the bankruptcy petition. See *In Re: Discount Plywood Centers, Inc.*, 11 B.R. 866 (1981). Las Aguilas filed Chapter 11 proceedings for an arrangement on September 27, 1972. By that date two of the notes in question (one executed on August 19, 1969 for the amount of $25,012.58; the other on September 16, 1969 for the amount of $8,000.00) were already time-barred by the applicable statute of limitations. Therefore, as of these notes the claims asserted by the F.D.I.C. against Defendants on the basis of the contracts of guarantee are time-barred since they were already so barred as to Las Aguilas when the filing of the Chapter 11 petition took place and as such were not subject to the toll compelled by Section 11(f).

The fact that the F.D.I.C.'s claims as to the two above-referred notes are time-barred is not changed by the language of a waiver provision that was incorporated by Banco Crédito in the contracts of guarantee that were signed by Defendants. Such provision, translated from Spanish, reads as follows:

"No delay by the Bank or its succesors or assignees in exercising or making fulfill any right or obligation under this document, or in taking any action to collect or exercise any right of the debt or obligations hereby guaranteed, shall be interpreted as a waiver of such rights or liens or obligations, or shall affect the rights of the Bank in this document as refers to the subscribers to this letter of guaranty."

■ Through this language, it could be said, Defendants waived beforehand their right as guarantors to raise as a defense a delay by the Bank in taking action to collect against the principal. The problem is that this type of waiver provision is against

the specific language of the Civil Code of Puerto Rico. In effect, as stated in 31 L.P.R.A. 5246: "Persons with the capacity to alienate may renounce the prescription acquired, but not the right to prescription in the future."

In the words of Spanish commentator Luis Díez Picazo, Article 1935 of the Spanish Civil Code, equivalent to Article 1835 of the Civil Code of Puerto Rico (31 L.P.R.A. 5246), prohibits the waiver beforehand of the right to raise in the future the prescription not yet acquired. See, *La prescripción en el Código civil*, Bosch, Barcelona, 1964, pp. 63–65. And as was suggested by another distinguished scholar, waiver provisions like the above are against public policy as established in the Civil Code, and as such, out of the reach of the obligations that can be created by private parties in a contract. See, Quintus Mucius Scaevola, *Código civil comentado*, Instituto Editorial Reus, Madrid, 1958, T.xx, pp. 589–90. See also T. Castán Tobeñas, *Derecho civil español, común y foral*, Reus, S.A. Madrid, 1971, T. I, Vol. II, p. 850; Mazeaud & Mazeaud, *Lecciones de Derecho civil*, Ediciones Jurídicas Europa-América, Buenos Aires, Vol. III, Pt. 2, p. 434; T.I, Vol. I(2), p. 434; J. Puig Brutau, *Fundamentos de Derecho civil*, Bosch, Barcelona, 1979, T.I, Vol. I(2), pp. 849–59.

At the time that the contracts of guarantee were signed by Defendants the defense of prescription was not then available. Thus, the waiver provision in question falls within the prohibition contained in Article 1835 of the Puerto Rico Civil Code. 31 L.P.R.A. 5246.

Nor is the result of this case changed by the fact that on 1977, according to Co-defendant Rafael Barrera's Sworn Statement, an acknowledgement of Las Aguilas' obligation took place. In effect, on November 30, 1977, the Trustee for Las Aguilas acknowledged said corporation's obligations to the F.D.I.C. According to the Commerce Code of Puerto Rico, "the period of prescription shall begin to be counted again in case of the acknowledgement of the obligations from the day this is done." 10

L.P.R.A. 1903. Thus, as to *Las Aguilas* a new period of prescription began on the date of the acknowledgement of its obligations to the F.D.I.C. Consequently, the new three-year period had not expired as to *Las Aguilas* when the F.D.I.C. acquired the assets of Banco Crédito on 1978.

However, as stated in the Civil Code, any person "interested in validating a prescription may benefit thereby, notwithstanding the express or implied renunciation of the debtor or owner." 31 L.P.R.A. 5248. According to Spanish commentator José Puig Brutau, this Section allows the surety to benefit from prescription despite the acknowledgement by the principal of its obligations to creditors. See, *Fundamentos de Derecho civil, supra,* at 866. See also T.M. Manresa y Navarro, *Comentarios al Código civil espaöl*, Reus, S.A., Madrid, 1973, T. X11, p. 1048. Since under *Mansiones de Park Gardens v. Scotiabank de Puerto Rico*, 83 J.T.S. 77, the relationship of Defendant to Las Aguilas is one based on joint surety, the acknowledgement by *Las Aguilas* of its obligations with the F.D.I.C. does not work to enjoin *Defendants* from alleging the affirmative defense of prescription in the instant case. See also *Carr v. Nones*, 98 P.R.R. 230 (1970); J.M. Manresa y Navarro, *Comentarios al Código civil español, supra,* J.L. Lacruz Berdejo, *Manual de Derecho civil*, Bosch, Barcelona, 1980, p. 537. Defendants did not join *Las Aguilas* in acknowledging the *Las Aguilas'* extension of the obligations. Thus Defendants are not bound *as sureties* for the prescriptive consequences of said acknowledgment. In addition, there has been no renewal of the instruments on which Plaintiff's claims against Defendants are based. Accordingly, Plaintiff's claims against Defendants relating to the promissory notes executed by *Las Aguilas* on August 19, 1969 and on September 16, 1969 are, as are those that relate to the notes executed by Guayanés, time-barred by the Commerce Code of Puerto Rico since they were already so barred when Plaintiff acquired the assets of Banco Crédito on 1978.

Defendants' Motion for Summary Judgment is hereby GRANTED as to these time-barred claims. Therefore, the complaint is DISMISSED as to all claims pertaining to the notes executed by Las Aguilas before September 27, 1969.

It is also ORDERED that the complaint be DISMISSED as to all claims relating to the notes executed by Guayanés.

It is further ORDERED that Defendants' Summary Judgment be DENIED as to those claims that relate to the promissory notes executed by Las Aguilas after September 27, 1969 guaranteed by Defendants through the contracts of guarantee of August 22, 1968 and February 6, 1970.

IT IS SO ORDERED.