USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2288 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff, Appellee, v. TORREFACCION CAFE CIALITOS, INC., ET AL., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Carmen Consuelo Cerezo, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Schwarzer*, Senior District Judge. _____________________ ____________________ Gilberto Mayo-Pagan with whom Mayo & Mayo was on brief for ____________________ _____________ appellants. Daniel Glenn Lonergan , Counsel, with whom Ann DuRoss, _________________________ ___________ Assistant General Counsel, Colleen B. Bombardier, Senior Counsel, _______________________ Federal Deposit Insurance Corportion, and Jose R. Garcia Perez, ______________________________________ ________________________ Gonzalez, Bennazar, Garcia-Arregui & Fullana, were on brief for _______________________________________________ appellees. ____________________ August 15, 1995 ____________________  ____________________ *Of the Northern District of California, sitting by designation. CAMPBELL, Senior Circuit Judge. The Federal _______________________ Deposit Insurance Corporation ("FDIC") seeks to recover funds under several promissory notes once held by Girod Trust Company ("GTC"), a failed Puerto Rico bank. The defendants are the debtor, co-debtor, sureties, and guarantors of those notes. The district court denied defendants' motion for partial summary judgment and granted the FDIC's motion for summary judgment. Defendants now appeal, arguing that the district court erred in holding that the FDIC's claims were not barred by the statute of limitations. We affirm in part and reverse in part. I. The facts are undisputed. The defendants in this case are: (1) Torrefaccion Cafe Cialitos ("TCC"), a Puerto Rico company that processes and distributes coffee; (2) Pedro Maldonado-Rivera (referred to by the district court as "Maldonado I"), the president of TCC; (3) Daisy Ramirez de Arellano ("Ramirez"), Maldonado I's wife and an officer of TCC; (4) the legal conjugal partnership formed by Maldonado I and Ramirez; and (5) Pedro Maldonado-Ramirez ("Maldonado II"), TCC's vice president. TCC is the debtor for the loan transactions that are at the center of this case. The remaining defendants are the co-debtors, sureties, and guarantors of those loans.  -2- 2 In this suit, the FDIC seeks to collect the principal and interest due from the following three loan transactions: 1. 1977 Loan Transaction --- On May 27, 1977, ______________________ Maldonado I (personally and as president of TCC) and Ramirez (personally) executed a loan agreement in favor of Banco Financiero de Ahorro de Ponce, under which Banco Financiero agreed to lend TCC $230,000. To evidence the loan, Maldonado I (personally and as president of TCC) executed two promissory notes: Note I, for $70,000, due on May 30, 1992, and Note II, for $160,000, due on May 30, 1984. To further secure payment of the loan, and any other TCC debt, TCC executed a pledge agreement delivering three bearer mortgage notes and a chattel mortgage. Maldonado I and Ramirez also signed personal guaranties for the loan. The Farmers Home Administration guaranteed 90% of the loan. GTC subsequently entered into an agreement to purchase the remaining 10% of the loan, should TCC default for a term longer than three consecutive months. TCC defaulted on the loan, and GTC purchased the loan on January 10, 1979. 2. 1979 Loan Transaction --- On March 5, 1979, ______________________ TCC executed a loan agreement in favor of GTC, under which GTC loaned TCC $110,000. To evidence the loan, Maldonado I (as president of TCC) executed two promissory notes: Note III, for $35,000 and Note IV, for $75,000. Final payment on -3- 3 Note III was due March 5, 1986; final payment for Note IV was due March 5, 1981. To secure payment of the loan, Maldonado I (as president of TCC) executed a pledge agreement delivering one bearer mortgage note. Later, to further secure the loan, Maldonado (personally and as president of TCC) and Ramirez (personally) executed a second pledge agreement delivering another bearer mortgage note. Maldonado I and Ramirez also signed personal guaranties for the loan. 3. 1981 Line of Credit --- On April 3, 1981, _____________________ Maldonados I and II (personally, and as TCC's president and vice president) executed an open-end credit agreement with GTC, under which GTC extended to TCC a line of credit of up to $250,000, to be disbursed as cash advances or credits to its checking account. Maldonados I and II executed a continuing guaranty without collateral, jointly and severally guaranteeing to the bank the punctual payment of TCC's debts. Under the line of credit, sixteen promissory notes were executed in 1981 and 1982, with payment due throughout 1982. On July 31, 1984, TCC petitioned for bankruptcy under chapter 11. In the petition, GTC was listed among TCC's creditors. On August 16, 1984, GTC was declared insolvent, and the FDIC was appointed its receiver, acquiring the assets giving rise to the claims in this case. On April 11, 1986, the TCC bankruptcy case was dismissed. On May 10, 1991, the FDIC brought this action to collect on the -4- 4 promissory notes it had acquired from GTC. TCC moved for summary judgment, arguing that the limitations period for collection on the promissory notes had expired. The FDIC opposed the motion and filed its own motion for summary judgment, which the district court granted. II. Under Puerto Rico law, actions to collect on commercial promissory notes are subject to a limitations period of three years from the note's date of maturity. P.R. Laws Ann. tit. 10, 1908. The running of this limitations period, however, is interrupted "by suit or any judicial proceeding brought against the debtor," P.R. Laws Ann. tit. 10, 1903, including bankruptcy proceedings. See FDIC v. ___ ____ Barrera, 595 F. Supp. 894, 901 (D. P.R. 1984). Puerto Rico _______ law further provides that interruption of the limitations period "in joint obligations equally benefits or injures all the creditors or debtors," P.R. Laws Ann. tit. 31, 5304, and an interruption "against the principal debtor by suit for debt shall also lie against his surety." P.R. Laws Ann. tit. 31, 5305.  Federal law establishes an additional six-year limitations period for suits brought by the FDIC to collect on assets it acquires as receiver of a failed bank. 12 U.S.C. 1821 (d)(14)(A) (1988 & Supp. 1995) ("FIRREA"). Thus, if the state limitations period has not yet run when -5- 5 the FDIC steps in, the federal limitations period will apply. The period begins to run upon appointment of the FDIC as receiver or accrual of the action, whichever is later. 12 U.S.C. 1821 (d)(14)(B). The federal limitations period does not, however, operate to extend claims that have already lapsed under the state limitations period before the FDIC has acquired them. See, e.g., Barrera, 595 F. Supp. at 898. ___ ____ _______ Applying these various statutory provisions to this case, the district court held that the FDIC's claims, based on the three loan transactions, were all timely filed. The court found that the three-year limitations period of 1908 applied to the three loans, commencing on the maturity date of each loan: May 30, 1992 for the 1977 loan; March 5, 1986 for the 1979 loan; throughout 1982 for the 1981 line of credit. In calculating the maturity dates of the loans, the court looked to the date when the final payment was due on each loan transaction as a whole, not to the individual maturity dates of the underlying promissory notes. For example, although Note IV of the 1979 loan had a maturity date of March 5, 1981, the district court considered the note part of a single loan transaction, with an overall maturity date of March 5, 1986.1  ____________________ 1. With respect to Note IV, the district court alternatively found that, even if the later maturity date did not control and the claim based on Note IV was therefore untimely (since the bankruptcy proceeding began more than three years later), it was revived through TCC's listing of -6- 6 The court then found that TCC's bankruptcy petition was a "judicial proceeding" under 1903, and that the limitations periods for the claims against TCC on all three loans were tolled as of July 1984. The court further found, pursuant to 5304 and 5305, that the tolling also applied for suits against TCC's co-debtors, guarantors, and sureties. Finally, the court found that, once the FDIC was appointed receiver in August 1984, the FIRREA's six-year limitations period came into effect, since the claims had not yet lapsed. Under 12 U.S.C. 1821, the court held, FIRREA's limitations period began to run in April 1986 at the earliest, when TCC emerged from bankruptcy and the FDIC's claims accrued. As the suit was filed within six years, in May of 1991, it was timely. III. On appeal, defendants argue that the district court erred in holding: (1) that the bankruptcy proceeding tolled the running of the limitations period for claims against the co-debtors, sureties, and guarantors arising from Note II and the notes underlying the 1981 line of credit; and (2) that the claims against all defendants based on Note IV of the 1979 loan transaction were timely filed. Defendants state that they do not appeal from the district court's decision regarding the claims based on Note I and Note III. As this  ____________________ the claim in the bankruptcy filing. P.R. Laws Ann. tit. 10, 1903. -7- 7 is an appeal from a summary judgment, we review the district court's decision de novo. See Pagano v. Frank, 983 F.2d 343, _______ ___ ______ _____ 347 (1st Cir. 1993). Thus, we will affirm a grant of summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c). A. Tolling of Limitations Period _____________________________ Defendants argue first that, although the bankruptcy proceeding may have tolled the limitations period for suits against the debtor TCC, it did not toll the statute of limitations for suits against co-debtors, guarantors, and sureties as well. This is so, defendants argue, because the automatic stay provision of the federal bankruptcy code, found in 11 U.S.C. 362, preempts 5304 and 5305 of Puerto Rico's commercial code. Defendants argue that, under 11 U.S.C. 362, a bankruptcy proceeding automatically stays, and therefore tolls the statute of limitations for, actions against debtors but not against co-debtors, guarantors, or sureties. See Austin v. Unarco Indus., Inc., 705 F.2d 1, 4-5 ___ ______ ___________________ (1st Cir.), cert. dismissed, 463 U.S. 1247 (1983). To the _______________ extent they toll the limitations period for suits against co- debtors, guarantors, and sureties, defendants argue, 5304 and 5305 conflict with the bankruptcy code and are thus preempted. -8- 8 If 5304 and 5305 are preempted, defendants argue, then the claims against co-debtors, guarantors, and sureties based on Note II2 and the promissory notes underlying the 1981 letter of credit are untimely. For example, the promissory notes underlying the 1981 line of credit all had maturity dates in 1982. The FDIC acquired the notes in August of 1984, before the three-year limitations period had lapsed. However, if the limitations period for suits against the co-debtors, guarantors, and sureties was not tolled by the bankruptcy proceedings, then the six-year FIRREA limitations period began running in August of 1984, when the FDIC acquired the assets, not April of 1986, when TCC emerged from bankruptcy. As the claims against the co- debtors, guarantors, and sureties were filed more than six years later in 1991, the claims would be untimely. We find defendants' preemption argument to be without merit. The provisions of the federal bankruptcy code preempt only those state laws that are in conflict with federal law. See Stellwagen v. Clum, 245 U.S. 605, 613 ___ __________ ____ (1918). True, 362 automatically stays only suits filed against debtors and not suits against that debtor's co- debtors, guarantors, or sureties. Austin, 705 F.2d at 4-5. ______  ____________________ 2. Although defendants do not explicitly refer to Note II in their argument, the argument based on the 1981 promissory notes is equally applicable to Note II. We consider the argument as applied to Note II, since the result is, in any event, the same. -9- 9 But this does not indicate an inconsistency with 5304 and 5305. Nothing in the decisions construing 362 to stay only suits against debtors implies that 362 precludes states _________ from themselves staying suits against co-debtors, guarantors, and sureties. These decisions hold only that 362 does not ________ itself stay, nor require the staying of, such actions. See ___________ ___ Austin, 705 F.2d at 5 (recognizing that circumstances may, in ______ some cases, warrant a stay against co-debtors as well). Furthermore, these cases deal with stays, not limitations _____ periods; thus, even if a creditor may proceed against co- debtors, guarantors, or sureties during the pendency of a bankruptcy proceeding, nothing bars a state from extending the limitations period for such suits under state law.3 ___________________ Puerto Rico is still free to extend the limitations period, under its own laws, for actions against co-debtors, sureties, and guarantors, as it has done under 5304 and 5305. There is no conflict between such an extension and the purpose behind 362. By staying actions against the debtor during bankruptcy, 362 gives the debtor a degree of breathing room, relieving it of financial pressure and allowing it to attempt repayment of its debts or to adopt a  ____________________ 3. For the same reason, defendants' reliance upon Camara ______ Insular v. Anadon, 83 P.R.R. 360, 365-66 (1961) and Santiago _______ ______ ________ v. Ares, 25 P.R.R. 446, 448 (1917) is misplaced, as both of ____ those cases deal only with the impact of bankruptcy proceedings on the liability of co-debtors, guarantors, and _________ sureties, not upon the limitations period for bringing such claims.  -10- 10 reorganization plan. See S. Rep. No. 989, 95th Cong., 2d ___ Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, _____________ 5840-41. In tolling the limitations period for suits against co-debtors, guarantors, and sureties during the pendency of a bankruptcy proceeding against the debtor, 5304 and 5305 do not impinge upon this breathing room or otherwise detract from the protection offered the debtor by 362.  As there is no conflict, 5304 and 5305 are not preempted and serve to extend the limitations period during bankruptcy proceedings for suits against co-debtors, guarantors, and sureties. See Barrera, 595 F. Supp. at 901; ___ _______ FDIC v. Marco Discount House, 575 F. Supp. 730, 732 (D. P.R. ____ ____________________ 1983). Accordingly, the district court correctly held that the FDIC's claims against the co-debtors, guarantors, and sureties did not accrue until April of 1986, when the bankruptcy case was dismissed. As the claims were filed within FIRREA's six-year limitations period, they are timely. B. Note IV _______ Defendants argue that, even if the bankruptcy proceeding did toll the statute of limitations for claims against co-debtors, guarantors, and sureties, the claim based on Note IV ($75,000) supporting the 1979 loan transaction was nevertheless untimely. Defendants point out that the maturity date on the Note was March 5, 1981. Under the three-year limitations period, the claim expired on March 5, -11- 11 1984, several months before the bankruptcy proceeding was instituted and before the FDIC acquired the note. Thus, they argue, neither the tolling provisions under Puerto Rico law nor the six-year limitations period under FIRREA apply, and the claim is untimely.4  The FDIC argues that the district court correctly found that Note IV was not a separate loan, but merely part of a single, 1979 loan transaction. Thus, the maturity date for the Note was actually the maturity date for the entire loan, March 5, 1986, and not March 5, 1981. In reaching its conclusion, the district court pointed in particular to the fact that both Note III and Note IV were part of a single loan agreement, that there was only one application to the FHA for the loan and guarantee stating the total amount of $110,000, and that there was only one guarantee for the total amount of the loan. The FDIC argues that defendants do not expressly contest this finding on appeal, and that it should therefore be affirmed. Since the maturity date was 1986, the limitations period had not run by the time the FDIC acquired the loan.  ____________________ 4. Defendants also argue that the district court erred in concluding that TCC's listing of the Note in its bankruptcy schedules served to revive the claim under P.R. Laws Ann. tit. 10, 1903. Evidently recognizing that the case law appears to support defendants' argument, see FDIC v. Cardona, ___ ____ _______ 723 F.2d 132, 137 (1st Cir. 1983), the FDIC does not contest this argument on appeal, relying instead on the district court's alternate ground for the result. -12- 12 While it is true that defendants have not expressly contested the district court's conclusion on this ground, we find that the defendants have implicitly contested the district court's finding by consistently discussing Note IV as a separate claim and by calculating the timeliness of that claim from Note IV's date of maturity. We further hold that defendants' argument has merit. We see no legal basis for treating the two promissory notes as a single loan for statute of limitations purposes. The three-year statute of limitations applies, by its terms, to commercial promissory notes. See P.R. Laws Ann. tit. 10, 1908, ("Actions arising ___ from drafts shall extinguish three years after maturity . . . ________ . A similar rule shall be applied to commercial bills of exchange and promissory notes . . . ." (emphasis added)); see ________________ ___ also Barrera, 595 F. Supp. at 898; Marco Discount House, 575 ____ _______ ____________________ F. Supp. at 731. In this case, the 1979 loan transaction was supported by two separate promissory notes with two separate maturity dates: March 5, 1981 and March 5, 1986. Under a straightforward application of the statute, the limitations periods for suits based on the two Notes began running at different times.  We see no legal basis for importing the maturity date of Note III into Note IV despite the separate maturity date on the face of Note IV. The fact that the two notes happened to be part of the same "loan transaction" is -13- 13 immaterial for statute of limitations purposes, since the operative legal documents were the notes themselves. Accordingly, the limitations period for claims based on Note IV expired three years after maturity, on March 5, 1984, before it could be interrupted by the bankruptcy proceeding and before the FDIC acquired the note. The FDIC's claim based on that note is therefore untimely. IV. We affirm the district court's holding that the FDIC's claims on Note I, Note II, Note III, and the notes underlying the line of credit were all timely filed, but reverse the district court's holding that the claim on Note IV was timely filed. We remand to the district court for a recalculation of the judgment amount in light of this decision. So ordered. Each party to bear its own costs. __________ ________________________________ -14- 14