# United States Court of Appeals
## For the First Circuit

No. 11-1506

TOMÁS ESCOBAR-NOBLE,

Plaintiff, Appellant,

v.

LUXURY HOTELS INTERNATIONAL OF PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Chief Judge,
Selya and Lipez, Circuit Judges.

Enrique J. Mendoza Mendez and Mendoza Law Offices on brief for appellant.
Radamés A. Torruella, Jan Carlos Bonilla-Silva, and McConnell Valdés LLC on brief for appellee.

May 24, 2012

**SELYA, Circuit Judge.** The outcome of this appeal depends on whether a court or an arbitrator should decide a claim that an otherwise applicable arbitration clause is unenforceable. We hold that, in the circumstances of this case, the task is for the arbitrator.

Defendant-appellee Luxury Hotels International of Puerto Rico, Inc. (the Hotel) operates the Ritz-Carlton Hotel & Casino in San Juan, Puerto Rico. In 2001, the Hotel hired plaintiff-appellant Tomás Escobar-Noble as a casino worker.

Approximately six years into his employment, the appellant — for reasons not reflected in the record — filed a charge of sex and age discrimination with the Equal Employment Opportunity Commission (EEOC).

In his complaint in this case, the appellant alleges that, shortly after he made these filings, his supervisors embarked on a pattern of retaliation ultimately resulting in his dismissal on November 11, 2008. He filed a retaliation charge with the EEOC, which issued a right-to-sue letter on January 8, 2010. Armed with this letter, he sued his quondam employer in the federal district court. His complaint alleged retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(d), as well as supplemental causes of action under a gallimaufry of Puerto Rico statutes, pertinently

including P.R. Laws Ann. tit. 29, § 185a (Law 80) and P.R. Laws Ann. tit. 29, § 194a (Law 115).

Citing two separate agreements signed by the appellant, each of which contained an arbitration clause, the Hotel moved to compel arbitration and stay or dismiss the court case. See 9 U.S.C. §§ 2-4. The appellant opposed the motion, challenging the validity of the arbitration clauses. He asserted, among other things, that the agreements he had signed impermissibly shorten the applicable limitations period, impede public enforcement of anti-discrimination laws, and unduly burden workers' rights.

Ruling on the papers, the district court determined that the arbitration clauses were valid and enforceable. It proceeded to dismiss the case without prejudice for want of subject matter jurisdiction. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

Given the posture of this appeal, "we focus only on the threshold issue of arbitrability; we do not rule on the merits of the underlying claims." Unite Here Local 217 v. Sage Hospitality Res., 642 F.3d 255, 259 (1st Cir. 2011). Our review of the district court's order is de novo. Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005). Although we do not agree with the district court's reasoning, we may affirm its disposition of the case on any

independent ground made apparent by the record.  See InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003).

Our starting point is the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  "Congress passed the FAA to overcome a history of judicial hostility to arbitration agreements."  Campbell, 407 F.3d at 551 (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).  The FAA pays homage to the fundamental principle that an agreement to arbitrate is a matter of contract, Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010), and such an agreement should be placed "upon the same footing as other contracts," Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 271 (1995) (internal quotation marks omitted).

Section 2 of the FAA states that "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  To the extent that an agreement satisfies the imperatives of section 2, the FAA empowers an inquiring court to stay a judicial proceeding filed by a resisting party.  See id. § 3.  Should the resisting party remain recalcitrant, the court may compel arbitration.  See id. § 4.

Although sections 3 and 4 of the FAA are designed to operate independently, parties desiring to arbitrate commonly will file a single motion seeking the simultaneous benefit of both

-4-

provisions.  See Matterhorn, Inc. v. NCR Corp., 763 F.2d 866, 871 (7th Cir. 1985).  Here, the Hotel filed just such a motion.

The federal policy favoring arbitration is strong.  See KPMG LLP v. Cocchi, 132 S. Ct. 23, 25 (2011) (per curiam).  Even strong policies, however, have boundaries.  A court may order parties to arbitrate a given dispute only if they have agreed to submit such a dispute to arbitration.  See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2856 (2010).  It follows that a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claim(s).  Id. at 2857-58; Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011).  Once such a determination has been made, the court must direct the parties to arbitrate all "issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The appellant signed not one but two agreements that contained arbitration clauses — the first in 2001 and the second in 2005.  For purposes of this appeal, any variation in the language of these agreements is immaterial.  For ease in exposition, therefore, we limit our discussion to the more recent agreement.

The 2005 agreement provides in pertinent part: "I must request Arbitration if I wish to challenge my termination for any reason or for management decisions that I believe are

-5-

discriminatory or retaliatory."  Our review, which centers on the factual allegations of the complaint, see Dialysis Access Ctr., 638 F.3d at 378, indicates that the alleged acts of retaliation and the supplemental causes of action fall within the scope of the arbitration agreement.  Indeed, the appellant has made no assertion to the contrary.

Despite the fact that his claims fall within the four corners of the arbitration clause, the appellant originally challenged the enforceability of that clause on a multitude of grounds.  In this venue, however, he has narrowed his attack; he argues only that enforcement should be denied because the agreement that contains the arbitration clause imposes a one-year limitations period.  To be specific, he posits that the arbitration clause is invalid because the provision for a one-year limitations period ("I may request an Arbitration hearing within one year of the management decision I wish to appeal") impermissibly truncates the three-year statutory limitations period applicable to his claims under Laws 80 and 115.[1]  This claim was preserved below.

The appellant's argument is straightforward.  Each of the two statutes that he cites is subject to a three-year statutory limitations period.  See P.R. Laws Ann. tit. 29, §§ 185l, 194a(b).

---

[1] Law 80 creates a right of action in favor of an employee who is fired without just cause.  P.R. Laws Ann. tit. 29, § 185a.  Law 115 proscribes retaliation against employees who provide testimony "before a legislative, administrative or judicial forum."  Id. § 194a(a).

Shortening this period, the appellant says, deprives him of substantive rights afforded by Puerto Rico statutory law. Because statutes of limitations are deemed substantive in Puerto Rico, his thesis runs, limitations periods incorporated in labor legislation cannot, as a matter of public policy, be waived. See P.R. Laws Ann. tit. 31, § 3372 ("[C]ontracting parties may make the agreement and establish the clauses and conditions which they may deem advisable, provided they are not in contravention of law, morals, or public order.").

This argument triggers a threshold question as to whether it should be resolved by the court or by an arbitrator. As a general rule, and in the absence of an express agreement to the contrary, courts decide questions of arbitrability, that is, questions about whether the parties have agreed to submit a given dispute to arbitration. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). Whether a question is one of arbitrability within the meaning of this doctrine is not always cut-and-dried. See, e.g., Kristian v. Comcast Corp., 446 F.3d 25, 37-42 (1st Cir. 2006). There is a gray area, and confusion sometimes arises because "[l]inguistically speaking, one might call any potentially dispositive gateway question a 'question of arbitrability,' for its answer will determine whether the

underlying controversy will proceed to arbitration on the merits." Howsam, 537 U.S. at 83.

The Supreme Court has provided some guidance in this area. It has admonished that controversies underlying an arbitration agreement should be construed as questions of arbitrability in only narrow circumstances. See id. at 83-84. We have identified two categories in which issues typically involve arbitrability: "(1) disputes about whether the parties are bound by a given arbitration clause; and (2) disputes about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Kristian, 446 F.3d at 42 (citing Howsam, 537 U.S. at 84). Disputes falling into the first category include, for example, whether a person who is not a party to a contract is bound by the contract's arbitration clause. See, e.g., John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 544-48 (1964). Disputes falling into the second category include, for example, whether a particular grievance comes within the compass of an arbitration clause. See, e.g., AT&T Techs., 475 U.S. at 651-52.

The dispute here does not fall neatly into either of these two categories. The appellant does not argue that any of his claims outstrip the scope of the arbitration agreement. He says only that the contractual limitations period prevents him from fully vindicating certain of the statutory rights conferred by local law.

-8-

The fact that neither of the Howsam categories encompasses this dispute does not end our inquiry. The Supreme Court has more broadly stated that the issue of arbitrability depends, at least to some extent and in some contexts, on whether "the prospective litigant effectively may vindicate [his] statutory cause of action in the arbitral forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). With this in mind, we have stated that "[o]ne of the 'narrow circumstances' that might raise a question of arbitrability involves an allegation . . . that some of the terms in an arbitration agreement conflict with a [state] statutory right that is not waivable by contract." Anderson v. Comcast Corp., 500 F.3d 66, 71 (1st Cir. 2007). In such an event, "the court will have to decide whether the conflict precludes enforcement of the arbitration agreement." Id.

The appellant takes dead aim at the Anderson exception and mounts a "vindication of statutory rights" argument. When, as now, such an argument centers on a statutory limitations period, an inquiring court must start with the premise that decisions regarding the enforceability and effect of contractual limitations periods are most often for the arbitrator. See Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 11 & n.8 (1st Cir. 2005). But this is not always the case, and each dispute must stand on its own bottom. See Kristian, 446 F.3d at 43. The appropriate triage is composed of two steps. The court first must determine whether

-9-

there is a direct conflict between the limitations period delineated in the arbitration agreement and the state statute of limitations. Anderson, 500 F.3d at 75-76; see also Kristian, 446 F.3d at 45-46 & n.15 (citing PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 403-07 (2003)). In the absence of such a direct conflict, the inquiry ends. If, however, the court discerns a direct conflict, it must proceed to determine "whether there is ambiguity on the question whether the statute of limitations can be contractually shortened." Anderson, 500 F.3d at 75. The existence of such an ambiguity consigns any lingering question about the validity of the contractual limitations period to the arbitrator. Id.

In the case at hand, the appellant's complaint alleges that he was retaliated against from early 2007 until he was cashiered on November 11, 2008. He did not sue, however, until February 17, 2010 — more than one year but less than three years after the adverse employment action (his firing). We therefore assume, favorably to the appellant, that the contrast between the one-year contractual limitations period and the three-year statutory limitations period presents a direct conflict.[2]

_____

[2] We phrase this as an assumption, not as a finding of fact, because the district court opined that the filing of a charge with the EEOC tolled the statute of limitations. Escobar-Noble v. Ritz-Carlton Hotel & Casino, No. 10-1121, slip op. at 9-10 (D.P.R. Mar. 31, 2011). If so, the limitations period for the statutory claims would have begun to run anew on January 8, 2010, see, e.g., Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 101-02

-10-

This gets the appellant only halfway home.  To succeed on his "vindication of statutory rights" claim, he must show both that a direct conflict exists and that the conflict, without doubt, must be resolved in his favor.  <u>See</u>, <u>e.g.</u>, <u>id.</u>  If an ambiguity exists, the arbitrator — not the court — must decide the question of whether the limitations period can be shortened by contract.  <u>See</u> <u>id.</u> at 75-76.  Only if the answer is clear does the conflict between the arbitration clause and the statute of limitations raise a question of arbitrability for the court.  <u>See</u> <u>id.</u> at 76.

The appellant posits that individuals may not enter into contracts that run contrary to, or waive rights afforded by, Puerto Rico labor legislation.  <u>See</u> <u>Beauchamp</u> v. <u>Dorado Beach Hotel</u>, 98 P.R. 622, 624-25 (1970); <u>Compañía Popular de Transporte, Inc.</u> v. <u>Unión de Empleados de Transporte</u>, 69 P.R. 167, 179 (1948); <u>Compañía Popular de Transporte</u> v. <u>Dist. Court of Bayamón</u>, 63 P.R. 116, 121-23 (1944).  Relatedly, he posits that statutes of limitations, sometimes called prescriptive statutes, <u>see</u> <u>FDIC</u> v. <u>Consol. Mortg. & Fin. Corp.</u>, 805 F.2d 14, 18 (1st Cir. 1986), are substantive in nature.  <u>Olmo</u> v. <u>Young & Rubicam of P.R., Inc.</u>, 10 P.R. Offic. Trans. 965, 969 (1981); <u>Febo Ortega</u> v. <u>Superior Court</u>, 2 P.R.

<hr/>

& n.20 (1st Cir. 2006), and the suit would have been commenced within one year thereafter.  But this outcome is far from clear and, in all events, the crucial administrative filing — the charge of retaliation — is not part of the record that was before the district court.  Assuming the existence of a direct conflict obviates any need to pass upon either the applicability of tolling or its effect on the existence of a direct conflict.

-11-

Offic. Trans. 506, 509 (1974).  He insists that these precedents, taken collectively, signify that limitations periods applicable to the enforcement of labor laws cannot be abbreviated by contract. The Hotel fights tooth and nail against every aspect of this argument.

Notwithstanding the parties' vehement disagreement about whether statutes of limitations can be contractually shortened in the labor law context, they fail to identify any Puerto Rico Supreme Court decision directly on point.  In the absence of on-point authority, both parties repair to a provision of the Civil Code, which states that "[p]ersons with the capacity to alienate may renounce the prescription acquired, but not the right to prescription in the future."  P.R. Laws Ann. tit. 31, § 5246 (Article 1835).  Although each party spins this language to support a different answer to the question before us, the language is tenebrous, and the Puerto Rico Supreme Court has not yet clarified it.[3]

The muddiness of the language of Article 1835 and the dearth of relevant authority lead us to the commentators.  Because Puerto Rico is a civil-law jurisdiction, rather than a common-law

_____

[3] Federal courts have construed Article 1835 to mean only that parties cannot contractually waive a future right to assert a statute of limitations defense.  See, e.g., Consol. Mortg., 805 F.2d at 21-22; FDIC v. Barrera, 595 F. Supp. 894, 901-02 (D.P.R. 1984).  On this view, the language becomes more clear — but not in a way that helps the appellant.

jurisdiction, the most relevant commentary is likely to arise in other civil-law jurisdictions.  See Jones v. Pettingill, 245 F. 269, 276 (1st Cir. 1917).

Article 1935 of Spain's Civil Code is a counterpart of Article 1835 of Puerto Rico's Civil Code.  FDIC v. Barrera, 595 F. Supp. 894, 902 (D.P.R. 1984).  Several Spanish commentators discussing Article 1935 have agreed that contractually shortening a limitations period does not contravene either civil law or public policy.  See, e.g., Luis Díez Picazo, La Prescripción en el Código Civil 63-66 (Bosch ed. 1964); José Puig Brutau, Fundamentos de Derecho Civil 857-59, T.I, Vol.I(2) (Bosch ed. 1979); José Castán Tobeñas, Derecho Civil Español, Común y Foral 982-84, T.I, Vol.II (Reus ed. 1987).  The court below, relying on one such commentary, concluded that the appellant's proposed interpretation of Article 1835 was incorrect.  Escobar-Noble v. Ritz-Carlton Hotel & Casino, No. 10-1121, slip op. at 6-9 (D.P.R. Mar. 31, 2011).

To be sure, the Spanish commentators discuss the lawfulness of truncating limitations periods in commercial contexts.  They do not directly address statutes that involve the vindication of workers' rights.  But this observation cuts both ways: Article 1835 falls under a portion of Puerto Rico's civil code that sets out a framework of laws regulating commercial interactions in general, see P.R. Laws Ann. tit. 31, §§ 1-5305,

-13-

whereas labor laws fall into a different category, see P.R. Laws Ann. tit. 29, §§ 1-3004.

A close review of Puerto Rico's labor laws reveals that the legislature has crafted specific limitations periods for several laws designed to vindicate workers' rights. See, e.g., id. § 155m (establishing one-year limitations period for sexual harassment claims); id. § 250j (establishing three-year limitations period for minimum-wage law); id. § 279 (establishing one-year limitations period for overtime pay claim); id. § 688 (establishing one-year limitations period for certain benefit claims). While it can be argued that these statutes evince the legislature's overall intent to assign specific temporal parameters to claims arising under Puerto Rico's labor laws, the Puerto Rico Supreme Court has repeatedly stated that the principal purpose behind statutes of limitations is to encourage the swift resolution of legal disputes. Cintrón v. Commonwealth, 127 P.R. Dec. 582, 588-90 (1990) [P.R. Offic. slip trans. at 3-5]. In a similar vein, it has lauded the benefits of shorter limitations periods. See Olmo, 10 P.R. Offic. Trans. at 973-74 (applying one-year limitations period in employment discrimination case and explaining that "it is convenient that . . . actions for the violation of human rights be speedily filed and decided" because of the "vital public interest in that these actions be duly and rapidly aired in the furtherance of the collective well-being"). This viewpoint strongly suggests

-14-

that the court would not consider bargaining for a one-year limitations period in lieu of a three-year limitations period an affront to public policy.[4]

When all is said and done, there appears to be no clear answer to the question of whether Puerto Rico law permits or prohibits contractual abbreviation of limitations periods where workers' statutory rights are implicated. It therefore remains uncertain (and perforce ambiguous) whether the limitations period for the appellant's Law 80 and Law 115 claims can be validly shortened by an arms-length agreement between employer and employee. The resolution of this ambiguity is for the arbitrator, not the court.

Although this disposes of the principal issue on appeal, a loose end remains. The court below apparently assumed that the Hotel aspired to have the court case dismissed for want of subject matter jurisdiction. Escobar-Noble, No. 10-1121, slip op. at 1, 3-4. If this were so, the Hotel might have run a risk of waiving any right to arbitrate the dispute. See Tyco Int'l Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.), 422 F.3d 41, 44 & n.2 (1st Cir. 2005) (explaining that delay in seeking to compel arbitration and substantially engaging the litigation machinery may give rise to

_____

[4] We note in passing that the legislature itself has exhibited no distaste for relatively short limitations periods in cases involving workers' rights. See, e.g., P.R. Laws Ann. tit. 29, § 155m (fixing one-year limitations period for sexual harassment claims).

waiver of arbitral rights). The Hotel's motion, however, is to the contrary: the primary relief sought is to compel arbitration.

We think that substance must trump form. The essence of the district court's ruling was to grant the Hotel the bargained-for protection provided by the arbitration clause. The court should, therefore, have entered an order compelling arbitration and either staying or dismissing the action. See 9 U.S.C. §§ 3-4; see also Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 & n.21 (1st Cir. 1998).

We need go no further. For the reasons elucidated above, we vacate the order appealed from and remand to the district court with instructions to enter an order compelling arbitration of the claims sub judice and, as the district court may elect, either staying or dismissing the pending case. Each party shall bear his or its own costs on appeal.

**So Ordered.**

— Concurring Opinion Follows —

**LYNCH, Chief Judge (Concurring).** I agree with my colleagues that the district court did not err in enforcing the arbitration clause and declining to stay arbitration. However, I reach this conclusion through other means. The analysis in the majority opinion is based on arguments not made by plaintiff, not briefed by either party, and not necessary to resolve the case. I also have considerable reservations about it.

The argument plaintiff did make was that the arbitration agreement violated some Puerto Rico "public policy." This argument depends on its legal speculation that the Puerto Rico courts would someday hold that Article 1835 of the Puerto Rico Civil Code does not in employment matters permit arbitration agreements to shorten a statute of limitations, otherwise set by statute, which had not started to run.

The district court rejected the argument for two succinct reasons. First, it held that under Puerto Rico law, the limitation period has been tolled, thus there was no time bar issue presented in the case.[5] That alone justified sending the case to

---

[5] Under Article 1873 of the Puerto Rico Civil Code, claims filed with the EEOC are extrajudicial claims that toll any applicable statutes of limitations. See Rodríguez-García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Matos Molero v. Roche Prods., Inc., 132 P.R. Dec. 29, 1993 WL 839826 (1993)). The plaintiff filed two claims with the EEOC: the first on March 29, 2007, alleging sex and age discrimination, and the second on July 8, 2008, claiming that his supervisors engaged in a pattern of retaliation against him for filing a claim with the EEOC. The EEOC administrative proceedings continued until January 8, 2010, when the EEOC issued to the plaintiff a Notice of Right to

-17-

arbitration.  Plaintiff accepted and never contested, either in the district court or on appeal, the dates of the administrative filings on which the tolling ruling rests.  While there was no reason to doubt the facts on which the analysis rests, if there were, that also would have been reason to send the issue to arbitration.  See Kristian v. Comcast Corp., 446 F.3d 25, 44 (1st Cir. 2006).

Secondly, the district court analyzed the pure issue of law of interpretation of Article 1835 under rules of interpretation adopted by the Puerto Rico courts and concluded that plaintiff's proffered construction was wrong.  Therefore, there was no public policy conflict, and so that possible challenge to arbitrability did not exist in this case.

Especially given the lack of briefing[6] and the complexity and evolving nature of the case law on the determination of issues of arbitrability, we ought say no more than needed.

---

Sue.  The one-year statute of limitations therefore began to run on January 8, 2010 and ended on January 8, 2011.  The plaintiff filed his complaint in district court on February 17, 2010, well before the one-year statute of limitations would have expired.

[6] No party has addressed what effect, if any, recent Supreme Court jurisprudence, including the Court's decision in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), may have on public policy based objections to arbitration and the proper method of analysis.  In any event, in my view, even under the doctrines of Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), and Anderson v. Comcast, Corp., 500 F.3d 66 (1st Cir. 2007), the district court correctly construed Puerto Rico law and held that no conflict existed, and so the inquiry would end at that point.