William C. HAYS, etc.,
Plaintiff, Appellant,

v.

MOBIL OIL CORPORATION,
Defendant, Appellee.

No. 90–1682.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1991.

Decided April 18, 1991.

analysis on the distinction.

Robert F. Corliss with whom Katz, Fanger & Greeley, Boston, Mass., was on brief, for plaintiff, appellant.

Robert M. Gault with whom Rosemary M. Allen and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., were on brief, for defendant, appellee.

\* Of the Eastern District of Pennsylvania, sitting by designation.

1. Hays' causes of action for contribution and indemnification were asserted under 1) the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, 2) the Uniform Contribution Among Tortfeasors Act, M.G.L. c. 231B, and 3) Massachusetts common law.

Before TORRUELLA and SELYA, Circuit Judges, and POLLAK,\* Senior District Judge.

LOUIS H. POLLAK, Senior District Judge.

This is an appeal from an order of the district court granting summary judgment in favor of appellee Mobil Oil Corporation and against appellant William C. Hays. *Hays v. Mobil Oil Corp.*, 736 F.Supp. 387 (D.Mass.1990).

Hays is the executor of the estate of Arthur Groves. From 1940 to 1977, Groves was the proprietor of a Mobil gas station located on property Groves owned in Waltham, Massachusetts. Groves retired in 1977 and leased the station, still operating as a Mobil franchise, to his former employee, David King. In 1982, Groves died. Hays, as Groves' executor, continued to lease the station to King until June of 1985, when King ceased operations. Thereupon the City of Waltham directed Hays to remove one underground waste oil tank and three underground gasoline tanks; the removal was accomplished at a cost to Hays of $7700. During the removal of the four tanks, it was discovered that much of the adjacent soil was contaminated by waste oil and gasoline. The Massachusetts Department of Environmental Quality Engineering (DEQE) then directed Hays to remedy the contamination. Hays performed the required cleanup at a cost of $93,000. Hays sought reimbursement for removal and cleanup costs from Mobil as the former franchisor, but Mobil refused to provide funds. Thereafter, Hays brought suit in a Massachusetts court against Mobil, filing various claims for contribution and indemnification,[1] and for unfair and deceptive trade practices in violation of Massachusetts General Law chapter 93A.[2]

2. Chapter 93A § 2(a) provides:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

The final amended complaint also asserted causes of action for negligence and breach of warranty, but on cross-motions for summary judgment Hays waived these causes of action.

Mobil subsequently removed the state action to federal court on diversity grounds.

On cross-motions for summary judgment, the district court concluded that Hays' 93A claim was (1) time-barred and (2) supported by insufficient facts to survive a motion for summary judgment. The district court also concluded that Hays' claims for contribution and indemnification were defeated by the terms of an indemnity clause contained in franchise contracts governing the relationship between Mobil and Groves.

In Part II of this opinion, we address Hays' 93A claim. We conclude that it is barred by a one-year contractual limitations clause.

In Part III, we consider whether, under Massachusetts law, a provision in the franchise contracts indemnifying Mobil against "all losses and claims ... for ... property damage" protects Mobil against contribution and indemnification claims for reimbursement of cleanup and removal costs incurred by its franchisee in complying with the directives of government agencies. We conclude that the indemnity clause contained in the franchise contracts does protect Mobil against liability for cleanup costs, but might not protect Mobil against liability for tank removal costs.

We therefore (1) affirm in part and (2) vacate and remand in part for further consideration of the issue of Mobil's obligation, if any, to provide reimbursement for tank removal costs under Hays' claims for contribution and indemnity.

## I.

The following background facts are not in dispute:

## A.

Pursuant to the franchise agreement between Mobil and Arthur Groves, Mobil installed and maintained one underground waste oil tank and three underground gasoline tanks. In 1971, Mobil was advised by Groves that a problem had arisen with respect to the waste oil tank. According to the district court's recital of the facts, "Mobil sent a contractor to the station who discovered that one of the filler pipes had broken from the tank and was dumping waste oil directly into the soil surrounding the tank ... The contractor replaced the pipe and tank, refilling the hole with the contaminated soil." Thereafter, "the ground above the waste tank was too soggy to support a parked car." Upon Groves' request to Mobil, the contractor returned, "removed approximately a half foot of soil from the surface, replaced it with clean fill and paved the area with asphalt." 736 F.Supp. at 389.

In 1979, after Groves had retired, David King, Groves' lessee, purchased the four underground tanks and related piping from Mobil for $26.25. King informed Groves of the proposed transaction and received his permission for the deal, but Groves was not a party to the contract. Groves did not give any approval to Mobil to sell the equipment or to leave it on his property once it was sold.

Neither King nor Groves wanted to purchase the equipment, but King believed that Mobil might not renew his dealership if he failed to do so. Mobil informed King that it wished to sell the tanks to relieve itself of responsibility for maintaining equipment on property it did not own. In fact, Mobil had adopted a policy of selling equipment in such circumstances to limit exposure to legal liability as well as maintenance responsibilities. Dealers who refused to buy Mobil's tanks or otherwise acquire their own storage equipment would not have their contracts renewed under this policy. King currently declares that there was nothing deceptive in the sale of the tanks to him.

As part of the contract of sale, Mobil installed new pump calculators on the tanks which could handle prices in excess of $1.00 per gallon. King agreed to assume all responsibility for maintenance of the equipment and all liability for damages and injury caused by the equipment from the time of sale forward. 736 F.Supp. at 390 (record citations omitted).

When King ceased operations in 1985, the City of Waltham ordered Hays, as the executor of Groves' estate, to remove the four tanks. Hays called upon Mobil to do so, but

> Mobil refused by letter dated September 24, 1985 on the grounds that it no longer owned the tanks and had no duty or right to remove them at [Hays'] request. The tanks were removed by [Hays] in 1985 at a cost of $7,700.
>
> Upon removal of the tanks, [appellant] and the City discovered that the soil underneath the premises was contaminated by gasoline and waste oil. The state Department of Environmental Quality Engineering ('DEQE') was notified and in October, 1985 demanded that [Hays] clean up the site. [Hays] did so at a cost of $93,007.11, receiving a 'release' letter from DEQE on August 25, 1986. Mobil refused several requests for contribution and indemnification of the clean-up costs during this time period, again interposing the transfer of the tanks to King as a defense.
>
> On October 17, 1986, [Hays] sent Mobil a demand for full indemnification pursuant to [Mass.Gen.L.] chapter 93A charging that Mobil's prior refusal to aid in the tank removal and cleanup was an unfair and deceptive act under the statute. [Hays] filed this lawsuit ... on February 4, 1987. 736 F.Supp. at 390–91 (record citations omitted).

### B.

Throughout most of the Mobil–Groves franchise relationship, "Retail Dealer" and "Equipment Loan" contracts were in effect which contained the following indemnity clause:

> Indemnity. [Groves] shall indemnify and hold [Mobil] harmless against *all losses and claims* (including those of the parties, their agents, and employees) *for* death, personal injury, or *property dam-*

*age* arising out of (1) the use or condition of [Groves'] premises or the equipment and facilities thereon, regardless of any defects therein, (2) [Groves'] nonperformance of this contract or (3) the storage and handling of products on the premises. [Mobil] does not warrant or guarantee any equipment or facilities.[3] (Emphasis added).

These contracts also specified that a one-year limitations period would apply to all claims:

> [Groves] agrees in consideration of [Mobil's] execution of this contract that any claim of any kind by [Groves] based on or arising out of this contract or otherwise shall be *barred unless asserted by [Groves] by the commencement of an action within 12 months* [6 months in contracts in effect from 1950 to 1961] after the delivery of the products or other event, action or inaction to which the claim relates. *This provision shall survive any termination of this contract, however arising.*[4] (Emphasis added).

### II.

We first consider whether Mobil has any obligation with regard to reimbursement for cleanup and removal costs under Massachusetts General Law, chapter 93A, which prohibits unfair and deceptive business practices. In the district court and now on appeal, Hays has contended that Mobil's sale of the tanks to King for the price of $26.25 was an unfair and deceptive act, undertaken to dodge responsibility for legal liabilities associated with the tanks. Mobil has contended that the 93A claim is time-barred. Section 93A contains no limitations period built into the statute. But the Mobil–Groves franchise contracts specify that "any claim ... arising out of this contract or otherwise shall be barred unless asserted ... within 12 months." Rely-

---

**3.** See, e.g., Retail Dealer Contract, dated September 27, 1961 (in effect through November, 1975). This language was included in contracts in force at all times between 1950 and 1975. Contracts in force between 1940 and 1950, and between 1975 and 1977, contained similar provi-

sions with different language, see 736 F.Supp. at 389 n. 2, but the differences are not relevant to the present dispute.

**4.** See, e.g., Retail Dealer contract, dated September 27, 1961 (Appendix at 60).

ing on this contractual limitation, the district court found the 93A claim time-barred:

Plaintiff's chapter 93A claim arose on September 24, 1985, when Mobil first denied responsibility for the removal costs of the underground tanks.... Since plaintiff did not send a demand letter to defendant until October 17, 1986, and did not file suit until February 4, 1987, more than a year after he learned of defendant's alleged unfair and deceptive denial of responsibility for the tanks, his action under chapter 93A is barred by the one-year contractual limitations clause. 736 F.Supp. at 396.

Hays contends that (1) his 93A claim is a statutory claim and thus not subject to the contractual limitations clause, and (2) a one-year period, being unreasonably brief, contravenes public policy and thus should not be enforced.

■■■ The limitations clause, recited in various franchise agreements between Mobil and Groves, provided that

*any claim of any kind* by [Groves] based on or *arising out of this contract or otherwise* shall be barred unless asserted ... within 12 months after the delivery of the products or other event, action or inaction to which the claim relates. (Emphasis added).

We conclude, as did the district court, that this language is sufficiently broad to encompass the present statutory claim. We also conclude, as did the district court, that a one-year contractual limitations period,

although brief, is valid and enforceable.[5] As Judge Caffrey found in *Reynolds Industries, Inc. v. Mobil Oil Corp.*, 618 F.Supp. 419, 423 (D.Mass.1985), "[t]here is no evidence that a one-year limitations period is contrary to Massachusetts public policy."[6] Cf. *International Business Machines v. Catamore Enterprises*, 548 F.2d 1065, 1076 (1st Cir.1976) (construing New York law).[7]

### III.

■■■ We next consider Hays' claims for indemnification and contribution, which were dismissed by the district court on summary judgment as barred by the indemnity clause included in the Mobil–Groves franchise contracts. Hays contends that the clause, which provides for the indemnification of Mobil "against all losses and claims ... for ... property damage," should not be construed to excuse Mobil from having to reimburse Groves' estate for tank removal and cleanup costs mandated by the City of Waltham and by the state. Hays submits that costs incurred in complying with the remedial directives of government agencies are not included within the meaning of the term "property damage" as it appears in the indemnity clause.

The issue is one of Massachusetts law. A very similar issue was recently addressed by the Supreme Judicial Court in *Hazen Paper Co. v. United States Fidelity and Guaranty Co.*, 407 Mass. 689, 555

---

**5.** Because we hold that the district court was correct in concluding that Hays' 93A claim was barred by the contractual limitations period, we have no occasion to address the district court's alternative conclusion that, viewed on its merits, Hays' 93A claim lacked factual support sufficient to withstand Mobil's summary judgment motion.

**6.** Judge Caffrey further observed that

the Uniform Commercial Code, as adopted in Massachusetts, expressly permits contracting parties to reduce the period of limitation for commencing action on a contract to one year. Mass.Gen.Laws c. 106, § 2–725. A contract between a supplier and distributor which includes a one-year limitation provision is not unreasonable or offensive to state law where the state Uniform Commercial Code permits such reduction [citations omitted]. More-

over, chapter 93E of the General Laws of Massachusetts, which regulates agreements between suppliers and retail gasoline dealers, expressly includes a one-year limitation on causes of action brought under that chapter. Mass.Gen.Laws c. 93E, § 8.
618 F.Supp. at 423.

**7.** In *International Business Machines*, we observed that

a small consumer may often be required to deal with a large supplier on the latter's terms—perhaps the forces of competition are the only check to one-sided dealings. In any case, it seems to us that when a supplier and its customer, neither of whom is helpless in the marketplace, agree on terms limiting the period of liability for future services to one year, those terms must be respected.
548 F.2d at 1076.

N.E.2d 576 (1990).[8] There, the court was considering whether an insurance policy, which recited that the insurer would defend and indemnify the insured against all "damages on account of ... property damage," provided coverage where an insured was required by government agencies to reimburse them for environmental cleanup costs. The insured, Hazen Paper Company (Hazen), had been notified by the DEQE that it would be asked to provide reimbursement for the cost of removing 115 drums of hazardous material from the site of a waste-recycling facility. Hazen had also been separately notified by the Environmental Protection Agency (EPA) that it would be asked to provide reimbursement for costs incurred in responding to the actual release of hazardous materials at the site. Hazen brought an action for a declaratory judgment, seeking a declaration that its insurer was obligated under the terms of the policy to defend and indemnify it with respect to these costs.

On appeal from a grant of partial summary judgment, the Supreme Judicial Court, recognizing the sharp division of authority on this issue,[9] concluded that the balance of wisdom lay with the "majority" view that

> environmental cleanup costs, incurred in response to demands of government agencies, are 'damages' when there has been a discharge of pollutants that has caused property damage. 407 Mass. at 699 [555 N.E.2d 576].

The court explained that the crucial predicate for coverage, where cleanup costs are at stake, is that some actual property damage must have taken place. Where cleanup is solely a prophylactic gesture, preven-

tative rather than curative, a party covered under a damage indemnification clause may not look to its insurer for coverage:

> Damages on account of property damage do not include costs incurred in complying with an injunction or order directed to damage prevention or costs incurred in complying with the law, *where there has been no property damage.* *Id.* at 698 [555 N.E.2d 576]. (emphasis added).

Accordingly, the Supreme Judicial Court concluded that the insured was not covered with respect to the reimbursement sought by DEQE, for the reason that no property damage was implicated in the removal of the 115 drums. DEQE was responding to "only a threat of the release of hazardous material" and did not "allege the occurrence of any damage." *Id.* at 695, 555 N.E.2d 576. On the other hand, the court concluded that the insured was covered with respect to the reimbursement sought by EPA. Unlike DEQE, EPA was responding to the actual release of hazardous substances—to a situation in which damage had indeed occurred. The court's conclusion was based on its observation that "[t]he contamination of soil and groundwater by the release of hazardous material involves property damage." *Id.* at 698, 555 N.E.2d 576.

We now consider the applicability of the principles enunciated in *Hazen* to Hays' contribution and indemnification claims against Mobil.

*Cleanup Costs*

The language of the Mobil–Groves indemnity clause ("all losses and claims ... for ... property damage") is very similar to the one at issue in *Hazen* ("damages on account of ... property damage").[10] Thus,

---

**8.** *Hazen* was decided (June 14, 1990) approximately one month after the district court entered its order granting summary judgment (May 10, 1990).

**9.** Compare, e.g., *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1207 (2nd Cir. 1989); *Chesapeake Utils. Corp. v. American Home Assurance Col,* 704 F.Supp. 551, 560–61 (D.Del.1989) (holding that response costs are damages) and, e.g., *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.,* 842 F.2d 977, 986–87 (8th Cir.1988); *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1352–53

(4th Cir.1987) (holding that response costs are not damages). See also Abraham, *Environmental Liability and the Limits of Insurance,* 88 Colum.L.Rev. 942, 969 (1988).

**10.** This similarity is not diminished by the fact that the language at issue in *Hazen* was part of an insurance contract while the language at issue in this case appears in various franchise contracts. In reaching its conclusion in *Hazen,* the Supreme Judicial Court did rely upon the familiar rule of construction in the insurance context that ambiguous contract terms are to be

the relevant inquiry is whether the cleanup costs were incurred in responding to actual property damage. It is undisputed that contaminants had leaked into the soil beneath the gas station. It is also undisputed that cleanup was undertaken in order to remedy such contamination. *Hazen* establishes that "the contamination of soil ... by the release of hazardous material involves property damage." *Id. Hazen* thus compels the conclusion that the cleanup efforts undertaken at the gas station—at the cost of approximately $93,000—were in response to actual damage and are therefore covered under the terms of the indemnity clause.[11]

In reaching this conclusion, we reject Hays' contention that the term "property damage" is ambiguous and must therefore be construed against Mobil as the drafter of that clause. Hays draws support for this contention from *Hazen*, where the court observed:

> When pollution has occurred, cleanup costs are damages within the policy language because in that circumstance the word "damages," which is not defined in the policy, is ambiguous. If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it. 407 Mass. at 700 [555 N.E.2d 576].

The difficulty with appellant's argument is that it finds ambiguity where the *Hazen* court found none. In considering the clause "damages on account of ... property damage," the Supreme Judicial Court did, as Hays points out, find the term "damages" to be ambiguous. But the court apparently did not have the same problem with the term "property damage" —the term which Hays asserts to be ambiguous. The court was able to pronounce, without encountering any semantic obstacles, that "the contamination of soil ... by the release of hazardous material involves property damage." *Id.* at 698, 555 N.E.2d 576.

With regard to the one term that the *Hazen* court did find ambiguous—"damages"—we note that there is no such term included in the contract language at issue in the present case. Instead of employing the term "damages," the indemnity clause drafted by Mobil speaks of "all losses and claims"—a phrase we find unproblematic. While "damages" might be taken to connote a technical legal category whose contents are open to debate, "all losses and claims" is a catch-all phrase which, devoid of technical nuance, poses no interpretive difficulty.

### Removal Costs

In addition to seeking reimbursement for cleanup costs, Hays seeks reimbursement for $7,700 in tank removal costs. Under *Hazen*, contract language providing indemnification against "property damage" protects the indemnified party only against costs arising from actual damage. The question, therefore, is whether the removal costs, like the cleanup costs, were incurred in responding to actual damage.

As noted above, the Supreme Judicial Court held in *Hazen* that the costs of removing 115 drums of hazardous material were not costs attributable to "property damage" since they were costs relating "only [to] a threat of the release of hazardous material" rather than to "the occurrence of any damage." It may be that the *Hazen* holding is dispositive with respect to the tank removal costs at issue here, but we cannot determine this on the present record: the record made before the district court, and the district court's ruling on that

---

construed against the insuror. See 407 Mass. at 700, 555 N.E.2d 576. However, the court considered this rule of construction only when confronting the issue of ambiguity and did not rely on rules of construction unique to the insurance industry in any other aspect of its analysis. In the present case, we confront no ambiguous contract terms, see *infra*, and thus no reason to view the impact of *Hazen* as limited to the context of the insurance industry.

**11.** Hays contends that the release of contaminants in the subsurface soil of the gas station was not actual damage, because no real harm ever materialized from the contamination. This argument is unpersuasive. As discussed above, *Hazen* establishes that contamination is *per se* damage.

record, do not differentiate in sufficient detail between the factual contexts of the cleanup and removal costs to permit us responsibly to conclude that the *Hazen* holding is applicable to, or distinguishable from, the present case. In saying this, we intend no criticism of the district court's treatment of the issues before it. *Hazen* was not decided until a month after the district court's grant of summary judg-ment,[12] so the parties and the district court in the present case may very well not have seen any reason to draw fine distinctions between the two types of costs. The parties and the district court should be afforded an opportunity to address these matters afresh. To that end, we vacate so much of the district court's ruling as covers removal costs, and we remand to the district court.[13]

---

12. See note 8, *supra*.

13. Our remand encompasses the question whether the claim for contribution and indemnification for the tank removal costs incurred by Hays is time-barred.

The question is one to be considered against the following background:

From the inception of this litigation, Mobil has contended, as the district court put it, "that all of plaintiff's claims are barred by the one-year limitations clauses included in the franchise agreements, or, alternately, that the chapter 21E cause of action is precluded by the three-year statute of limitations for tort which should have started running at the time of the 1971 waste oil spill." 736 F.Supp. at 396. The district court determined "that plaintiff's chapter 93A claim is subject to the contractual time-bar, but … the chapter 21E cause of action is not precluded by either the one- or three-year limitations periods." *Ibid.*

In part II of this opinion, we have sustained the district court's ruling that the 93A claim is time-barred.

It is unclear whether the district court's further conclusion—"that the chapter 21E cause of action is not precluded by either the one- or three-year limitations periods"—is addressed to *all* of plaintiff's contribution and indemnification claims or just to the claim for reimbursement for the state-mandated cleanup costs. If that ruling only relates to the cleanup costs claim, we need not address it, since we have determined that the claim for cleanup costs is barred by the indemnity clause contained in the franchise agreement. But if the time-bar ruling also covers the tank removal costs claim, that aspect of the ruling must be considered here or reconsidered by the district court. Because we find that there is some ambiguity as to the intended scope of this aspect of the district court's time-bar ruling, we conclude that it would be more sensible to have the matter reassessed by the district court.

The ambiguity arises in the following way: In its explanation of why "the chapter 21E cause of action is not precluded," the district court seems to have focused on aspects of the case that appear, at least on their face, to relate primarily to the cleanup costs ("Thus, the court holds that the limitations period on plaintiff's chapter 21E cause of action did not begin to run when plaintiff first learned of the soil contamination, which could have been as early as 1971, but when plaintiff's liability for the cleanup of the site was finally fixed. In this case, the extent of plaintiff's liability was finally and firmly established by the DEQE 'release' letter of August 25, 1986. Plaintiff brought suit within a year of receipt of that letter." 736 F.Supp. at 397). However, elsewhere in its opinion, the district court described the 21E claim with sufficient generality so as arguably to include the claim for tank removal costs as well. Thus, after pointing out that the contribution and indemnification claims taken as a group arise under chapters 21E and 231B of the Massachusetts statutes as well as under common law, the district court stated: "Chapter 231B generally governs contribution among joint tortfeasors in the Commonwealth. Because Chapter 21E establishes an independent cause of action for contribution and indemnification, the court finds that plaintiff's claim is properly analyzed under that chapter, rather than the more general provisions of Chapter 231B." 736 F.Supp. at 392 n. 5.

In short, the district court has construed plaintiff's 21E claim as subsuming plaintiff's 231B claim. What the district court construed was an amended complaint which groups the contribution and indemnification claims under three counts—count 4, based on chapter 21E; count 5, based on "ordinary principals [sic] of indemnity" and also on chapter 21E; and count 6, based on chapter 231B. Thus, it appears that the district court may have deemed *all* of the contribution and indemnification claims—the claim for tank removal costs as well as the claim for cleanup costs—to be 21E claims. If the district court did in fact view all of the contribution and indemnification claims as "properly analyzed" under 21E, the district court's conclusion that Hays' "21E cause of action is not precluded" by a time-bar may have been intended to embrace both the cleanup costs claim and the tank removal costs claim.

To the extent that there is ambiguity about the scope of the district court's time-bar ruling, that ambiguity may reflect a facet of this case that we have already noted: the fact—unsurprising, since the district court proceedings were prior to *Hazen*—that the parties and the district court, in addressing the competing summary judgment motions, did not differentiate in any detailed way between the claim for cleanup costs and the claim for tank removal costs. In any event, we think the district court should have the op-

**104**

## IV.

For the foregoing reasons, we conclude 1) that appellant's 93A claim is time-barred, and 2) that, with respect to the contribution and indemnification claims, Mobil is indemnified against all liability for cleanup costs by virtue of the indemnity clause contained in the pertinent Mobil–Groves franchise contracts. However, we also conclude that we cannot decide on the current state of the record whether Mobil is protected by the indemnity clause against Hays' claims for contribution and indemnification with regard to the costs of tank removal. Accordingly, we affirm in part and vacate in part the order of the district court granting summary judgment, remanding the issue of Mobil's liability for tank removal costs under Hays' claims for contribution and indemnification for further consideration by the district court.[14] *It is so ordered.* No costs on appeal.

portunity, on remand of the claim for tank removal costs, to address the time-bar issue in tandem with the merits; if the record relating to the time-bar issue needs amplification, the district court can undertake this while we cannot.

**14.** We see no reason why the district judge who has so fully and thoughtfully immersed himself in this case should not conduct the proceedings on remand.