# United States Court of Appeals
## For the First Circuit

Nos. 06-2165, 06-2203

CARL ANDERSON, individually and on behalf of
all others similarly situated,

Plaintiff, Appellee/Cross-Appellant,

v.

COMCAST, CORPORATION, f/k/a AT&T Comcast Corp.;
COMCAST CABLE COMMUNICATIONS, INC.; COMCAST HOLDINGS CORPORATION,
f/k/a Comcast Corporation; COMCAST CABLE COMMUNICATIONS HOLDINGS,
INC., f/k/a AT&T Broadband, Corp.; COMCAST CABLE HOLDINGS, LLC,
f/k/a Telecommunications, Inc., f/k/a AT&T Broadband, LLC;
COMCAST MO GROUP, INC., f/k/a MediaOne Group, Inc.; COMCAST MO OF
DELAWARE, INC., f/k/a Continental Cablevision, Inc., f/k/a Media
One of Delaware, Inc.; COMCAST OF MASSACHUSETTS II, INC.;
AT&T CORPORATION,

Defendants, Appellants/Cross-Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lipez, Circuit Judge,

Tashima,* Senior Circuit Judge,

and Howard, Circuit Judge.

---

* Of the Ninth Circuit, sitting by designation.

Timothy C. Blank, with whom Joseph L. Sulman, Robert C. Heim, Nory Miller, and Dechert LLP were on brief, for Appellants/Cross-Appellees.

Michael J. Quirk, with whom Frank R. Saia and Stephen V. Saia were on brief, for Appellee/Cross-Appellant.

---

August 23, 2007

---

**LIPEZ, Circuit Judge**.  This appeal and cross-appeal require us to determine how our recent ruling in Kristian v. Comcast, Corp., 446 F.3d 25 (1st Cir. 2006) – in which we determined that specific provisions of Comcast's standard arbitration agreement with its cable customers had to be severed from the agreement because they prevented its customers from vindicating rights in the arbitral forum provided for in state and federal antitrust statutes – applies to consumer claims that Carl Anderson brings against Comcast, which seeks to compel arbitration under the same arbitration agreement.[1]  In pursuing his claims, Anderson invoked the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 9 ("Chapter 93A"), and various common law tort theories. Citing Kristian, the district court granted Comcast's motion to compel arbitration but only after severing provisions in the arbitration agreement prohibiting attorney's fees, double or treble damages and a class action remedy in the arbitral forum.  It also specified that "the arbitrator will have the power to determine the validity and applicability of the agreement's one-year statute of limitations."

After carefully analyzing the alleged conflicts between the language of the arbitration agreement and the statutory

---

[1] The arbitration agreement is contained within provisions eight to ten of a larger standard agreement entitled "Notice to Customers Regarding Policies, Complaint Procedures & Dispute Resolution."

provisions at issue under the framework established in Kristian, we conclude that only the conflict relating to the limitations period raises a question of arbitrability for the court to decide. We therefore vacate that portion of the district court's order compelling arbitration of the applicability of the contractual limitations period, and we conclude that the contractual limitations period is invalid as it relates to Anderson's Chapter 93A claim. However, that clause of the arbitration agreement is severable under the terms of the agreement; we therefore affirm the order compelling arbitration of Anderson's claims, absent that limitations clause. We also reverse that portion of the district court's order severing the agreement's class action provision and its bar on multiple damages awards. Those provisions did not pose questions of arbitrability.

## I.

The facts in this case are undisputed. Carl Anderson, a Massachusetts resident, has been a cable service customer of Comcast Corporation since at least May 31, 1994. Until 2002, he leased a cable converter box and remote control in connection with his cable subscription even though he owned a cable-ready televison or video cassette recorder. These unnecessary items were billed to him at approximately $4.30 per month.

In November 2005, Anderson filed a putative class action in Massachusetts Superior Court alleging that the imposition of

monthly rental fees on customers with cable-ready equipment violated Chapter 93A, in addition to violating general common law tort and contract law principles.  Chapter 93A provides a cause of action to consumers who have been injured by an "[u]nfair method[] of competition [or] unfair or deceptive acts or practices in the conduct of any trade or commerce," Mass. Gen. Laws ch. 93A, § 2.  Massachusetts courts have interpreted the terms of Chapter 93A broadly to include practices that "fall[] 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness.'" Lambert v. Fleet Nat'l Bank, 865 N.E.2d 1091, 1097 (Mass. 2007) (quoting Wasserman v. Agnastopoulos, 497 N.E.2d 19, 23 (Mass. App. Ct. 1986)).  While asserting no federal causes of action, Anderson grounds his Chapter 93A unfair trade practice claim on allegations that Comcast: (1) violated a provision of the Federal Communications Act requiring that "[a] cable operator shall not charge a subscriber for any service or equipment that the subscriber has not affirmatively requested by name," 47 U.S.C. § 543(f),[2] and (2) failed to comply with regulations issued by the Federal Communications Commission requiring cable providers to unscramble their basic programming signals so they can be received by customers with cable-ready

---

[2] The statute further states that "a subscriber's failure to refuse a cable operator's proposal to provide such service or equipment shall not be deemed to be an affirmative request for such service or equipment."  47 U.S.C. § 543(f).

equipment, 47 C.F.R. § 76.630(a).  For the statutory claim, Anderson seeks treble damages and attorney's fees; for the common law claims, he seeks actual damages, punitive damages, and declaratory and injunctive relief.

Shortly after Anderson filed his action, Comcast filed an unopposed petition for removal to federal court on the basis of diversity.[3]  Once in federal court, Comcast moved to compel arbitration under the arbitration agreement, which states in part:

> IF WE ARE UNABLE TO RESOLVE INFORMALLY ANY CLAIM OR DISPUTE RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE SERVICES PROVIDED, WE HAVE AGREED TO BINDING ARBITRATION EXCEPT AS PROVIDED BELOW.[4]

In addition to requiring customers to arbitrate their disputes with Comcast, the agreement requires that customers contact Comcast within a year of injury or waive any claim based on that injury; it requires customers to pay certain costs of arbitration, including their attorney's fees;[5] and it precludes arbitration on a class

---

[3] Comcast is a corporation organized under Pennsylvania law, with its principal place of business in Pennsylvania.  Anderson is a citizen of Massachusetts.

[4] The original text of the arbitration agreement is all in capital letters.  Throughout this opinion, when we reproduce text from the arbitration agreement, we will reproduce its capitalization scheme as well.

[5] The relevant language of the arbitration agreement states:

> The Company will pay for all reasonable arbitration filing fees and arbitrator's costs and expenses, except that YOU ARE RESPONSIBLE FOR ALL COSTS THAT YOU INCUR IN THE ARBITRATION, INCLUDING, BUT NOT LIMITED TO, YOUR

action basis and denies customers who prevail in arbitration multiple or punitive damages. Despite setting extensive limitations on a customer's recovery, the contract contains various clauses severing any terms that conflict with applicable law.

Anderson objected to the motion, arguing that arbitration under the terms of the agreement would effectively deny to plaintiffs the ability to vindicate their statutory and common law rights. The district court, relying heavily on the framework and analysis of Kristian v. Comcast, Corp., 446 F.3d 25 (1st Cir. 2006), granted Comcast's motion to compel arbitration, but only after determining that the agreement's provisions barring attorney's fees,[6] class actions, and multiple damages were "invalid and severed" as they related to Anderson's Chapter 93A claim. However, it held that the arbitrator had authority to determine whether the agreement's limitations period prevented Anderson from vindicating his statutory claim under Chapter 93A.

In its appeal, Comcast argues that the district court erred in concluding that the arbitration agreement's bar on class actions and multiple damages awards were invalid as they related to Anderson's Chapter 93A claim, and it urges us to reverse that portion of the district court's order severing these provisions

_____

EXPERT WITNESSES OR ATTORNEYS.

[6] Comcast does not appeal from the district court's ruling on attorney's fees.

from the arbitration agreement. Anderson cross-appeals from the district court's order compelling arbitration, arguing that – while the court correctly found particular provisions of the arbitration agreement invalid as they relate to his claims – the court should have found the entire arbitration agreement unconscionable and therefore unenforceable.[7] In addition, he cross-appeals the district court's ruling that the validity of the arbitration agreement's one-year limitations period should be determined by the arbitrator. He argues instead that the conflict between that limitations period and Chapter 93A's four-year statute of limitations creates a direct conflict that must be resolved by the court in favor of the longer statutory period.

## II.

We consider these claims against the backdrop of a strong pro-arbitration policy expressed by Congress and repeatedly upheld by the courts. The Supreme Court has consistently interpreted the Federal Arbitration Act, 9 U.S.C. §§ 1-16, as an effort to "revers[e] centuries of judicial hostility to arbitration agreements, . . . to allow parties to avoid 'the costliness and delays of litigation,' and to place arbitration agreements 'upon the same footing as other contracts.'" Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H.R. Rep. No. 96, 68th

---

[7] Comcast's appeal and Anderson's cross-appeal are separately docketed as #06-2165 and #06-2203, respectively.

Cong., 1st Sess., 1, 2 (1924)) (footnote omitted); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate. . . ."). Indeed, the Supreme Court has repeatedly upheld arbitration agreements against a variety of attacks, stating that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

Despite the Court's liberal policy favoring arbitration, it has made clear that the "question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986) (alteration in original)). This judgment – that the question whether the parties have submitted a particular disagreement to arbitration is an issue for judicial determination – is based on the presumed intent of the contracting parties favoring judicial

determination of such a question.  The Court refers to this presumed intent as the "interpretive rule."  Id.; see also Kristian v. Comcast, Corp., 446 F.3d 25, 38 (1st Cir. 2006).  But the Court has cautioned against an overly expansive application of the interpretive rule:

> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits.  The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope.  The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83-84 (citation omitted).

One of the "narrow circumstances" that might raise a question of arbitrability involves an allegation by a party to an arbitration agreement that some of the terms in an arbitration agreement conflict with a statutory right that is not waivable by contract.  If that claim withstands analysis, the court will have to decide whether the conflict precludes enforcement of the arbitration agreement.  See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628 (1985) ("Having made the

bargain to arbitrate, the party should be held to it unless [the legislature] itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). Alternatively, a party may challenge the enforceability of an arbitration agreement claiming that the agreement itself or some of its terms are unconscionable. See id. at 627 ("[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'") (quoting 9 U.S.C. § 2).

Anderson primarily raises a vindication of statutory rights argument as a defense to the obligation to arbitrate, claiming that Chapter 93A, and a related statute of limitations provision, preclude enforcement of the arbitration agreement. When faced with such a defense to the obligation to arbitrate, we must determine whether that defense poses a question of arbitrability for the court to decide. This question, to which we now turn, is at the heart of our analysis.

**III.**

We review the district court's decision de novo, as it rests entirely on questions of law. Stuart v. United States, 337 F.3d 31, 34 (1st Cir. 2003). We use the framework developed in Kristian v. Comcast, Corp., 446 F.3d 25 (1st Cir. 2006) to first

-11-

decide whether any of Anderson's challenges to the arbitration agreement pose questions of arbitrability.

## A.  Class Bar

We begin and end our analysis of the arbitration agreement's class bar by determining whether a conflict exists between the statute and the agreement.  We find no conflict.  With respect to class actions, the agreement states:

> THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS YOUR STATE'S LAWS PROVIDE OTHERWISE.

In Kristian, where we also assessed the validity of Comcast's bar on class arbitration, neither the state nor federal antitrust statute at issue mentioned the right of plaintiffs to proceed on a class basis.  As a result, our analysis focused on whether the nature and purposes of antitrust law suggested a conflict, and we determined that, "[b]ecause the denial of class arbitration in the pursuit of antitrust claims has the potential to prevent Plaintiffs from vindicating their statutory rights," id. at 55, such a conflict did exist.  Here, however, Chapter 93A specifically provides for the class action procedure.  It states: "Any persons entitled to bring such action may . . . bring the action on behalf of himself and such other similarly injured and situated persons."

-12-

Mass. Gen. Laws ch. 93A, § 9(2). Given this explicit statutory language, the relevant question here is whether Chapter 93A's class action provision is the kind of provision anticipated by the agreement's limiting language, "unless your state's laws provide otherwise." If so, there is no conflict between the arbitration agreement and the statute because the arbitration agreement, by its terms, permits arbitration to proceed on a class basis in the face of state law providing for such actions.

In these circumstances, we find PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 406-07 (2003), instructive. There, the Supreme Court faced a potential conflict between an arbitration agreement that prohibited punitive damages and statutory language entitling plaintiff to treble damages. Reasoning that an arbitrator could interpret the agreement to avoid a direct conflict (i.e., by finding that treble damages were not necessarily "punitive"), the Court found no question of arbitrability and compelled arbitration. Id. Likewise here, to the extent there is any ambiguity as to whether Chapter 93A "provides otherwise," the arbitrator must interpret the agreement in the first instance. See id., at 407 ("[S]ince we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract. . . . [T]he proper course is to

-13-

compel arbitration."). Thus, in light of the "unless" qualifier in the class action provision, we reject Anderson's contention that this provision raises a question of arbitrability and leave determination of the class action question in the first instance to the arbitrator.

**B. Multiple Damages**

The district court determined that the agreement's proscription of multiple damages also improperly prevented plaintiffs from vindicating statutory rights under Chapter 93A. The relevant language of the agreement states:

> IN NO EVENT SHALL WE OR OUR EMPLOYEES OR AGENTS HAVE ANY LIABILITY FOR PUNITIVE, TREBLE, EXEMPLARY, SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OUR PROVISION OF OR FAILURE TO PROVIDE ANY EQUIPMENT OR SERVICES TO YOU. . . . SUCH LIMITATION OF LIABILITY APPLIES IN ALL CIRCUMSTANCES REGARDLESS OF WHETHER SUCH DAMAGES MAY BE AVAILABLE UNDER APPLICABLE LAW, AND THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO RECOVER ANY SUCH DAMAGES.

As a prelude to assessing the district court's ruling, we review our approach to this multiple damages prohibition in Kristian, 446 F.3d at 44-50. There, we found a clear conflict between the language of the agreement and the federal antitrust statute, which requires that a plaintiff who established an antitrust injury "shall recover threefold the damages by him sustained," 15 U.S.C. § 15(a). Moreover, taking a preliminary look at whether the remedies provided by the antitrust statute could be contractually

-14-

waived, we found no ambiguity on the waiver issue that would require deference to the arbitrator. Kristian, 446 F.3d at 46-47 n.15. Hence, we decided that the remedy stripping provision of the arbitration agreement posed a question of arbitrability – i.e., that the court rather than the arbitrator should decide in the first instance whether the conflict between the arbitration agreement and the statute prevented Kristian from vindicating her statutory rights. Id. at 47-48.

Addressing that question (which we define as the "merits" in a vindication-of-statutory-rights-defense to a motion to compel arbitration), we first explained why the award of treble damages under the federal antitrust statutes could not be waived. Id. We then noted that this unwaivable conflict suggested plaintiffs should prevail on their defense to arbitration. Id. at 48. However, we then focused on a "savings clause" in the arbitration agreement specifically providing that, if certain remedies could not be contractually waived under applicable law, a plaintiff could retain those remedies under the agreement despite any contractual clauses to the contrary. Id. That "savings clause," by allowing severance of the prohibition on multiple damages as it related to the federal antitrust claim, effectively removed the conflict between the language of the arbitration agreement and the federal antitrust statute on this issue. Id. Therefore, we determined that, even though the presence of the damages limitation posed a

-15-

question of arbitrability, it did not preclude enforcement of the arbitration agreement.  Id.  We thus ruled that the plaintiffs could recover treble damages in arbitration for federal antitrust violations.

When we turned to the state antitrust provision, which specifies that "the court may award up to three times the amount of actual damages sustained," Mass. Gen. Laws, ch. 93, § 12, we concluded that Kristian had not established a question of arbitrability.  Kristian, 446 F.3d at 50.  In reaching that conclusion, we explained that even though Massachusetts law used the word "may" – indicating that multiple damages were discretionary – there was still a direct conflict between the statutory provision and the arbitration agreement because the arbitration agreement precluded the exercise of discretion to award treble damages that the statute granted to the decision maker.  Id. at 49.  We then took a preliminary look at the waiver question – that is, whether a plaintiff such as Kristian could contractually waive the right to treble damages under Massachusetts law.  In that analysis, we determined that "Massachusetts law on this question of waiver [was] ambiguous at best" because the statute made treble damages discretionary rather than mandatory and because the case law on whether remedies were contractually waivable under the statute was unsettled.  Id. at 50.  We therefore concluded that the arbitrator would have to decide in the first instance whether there

-16-

was a conflict between the arbitration agreement and the state law and whether that conflict made the arbitration agreement unenforceable.  Id.

We now turn to the different damages provision of Chapter 93A, which provides that a successful claimant is entitled to money damages, which "may include double or treble damages," Mass. Gen. Laws ch. 93A, § 9(3A) and specifies that "recovery shall be in the amount of actual damages . . .; or up to three but not less than two times such amount if the court finds . . . a willful or knowing violation" of the consumer protection act.  Id. at § 9(3) (emphasis added).  We note at the outset that this provision differs significantly from both the federal and state antitrust statutes at issue in Kristian because it neither mandates multiple damages in all instances of a violation (as does the federal antitrust statute), nor does it make multiple damages discretionary in all cases (as does the Massachusetts antitrust statute).  Instead, it requires  multiple damages only if a fact-finder determines that a "willful or knowing violation" occurred.

Apparently conceding that the statute and the agreement conflict, Comcast argues that this conflict does not pose a question of arbitrability for two reasons.  First, to the extent that the Massachusetts legislature made multiple damages permissive rather than mandatory, Comcast contends that we must follow our analysis of the state antitrust statute in Kristian and find that

whether the provision is waivable is "ambiguous at best."  We would therefore be forced to conclude that this conflict raises no question of arbitrability and that the arbitrator must decide waivability in the first instance.  Second, to the extent that Chapter 93A makes multiple damages mandatory if the arbitrator finds a willful or knowing violation, Comcast argues that it remains uncertain whether a conflict between the agreement and the statute will arise in this particular case because such a conflict is dependent upon the arbitrator's factual findings.  In the face of this factual uncertainty, Comcast argues, there is no question of arbitrability for the court to decide.

Comcast is correct on both points.  We have previously recognized that where the existence of a conflict between a provision in an arbitration agreement and a statute depends upon an arbitrator's factual finding relating to the merits of the dispute, no question of arbitrability arises.  In Kristian, we found that a possible conflict between the agreement's limitations period and the statute of limitations posed no question of arbitrability where the plaintiff alleged an ongoing injury because "(1) whether Plaintiffs in fact suffer from an ongoing injury . . .; and (2) whether such injury . . . tolls the statute of limitations . . . would require an examination of the 'merits of the case,' i.e., the facts, the province of the arbitrator."  446 F.3d at 44.  Thus, whether the conflict between the agreement and the statute posed a

question of arbitrability depended upon factual determinations within the arbitrator's purview. Here, with respect to the mandatory application of the multiple damages provision of the statute, there will be a conflict between that portion of the statute and the agreement only if the arbitrator finds a willful or knowing violation of the statute.

On the other hand, if the arbitrator finds a violation of the statute that is not willful or knowing, there will be a direct conflict between the agreement and the multiple damages provision of the statute because a flat prohibition against multiple damages removes even the discretion to award them. See id. at 49. However, it is ambiguous whether Anderson's right to a discretionary multiple damages remedy is waivable under Massachusetts law for the same reasons it was ambiguous whether the plaintiff in Kristian could waive a discretionary treble damages award under the Massachusetts antitrust statute.

In summary, despite the direct conflicts between the multiple damages provision of the statute and the multiple damages prohibition in the arbitration agreement, these conflicts do not pose a question of arbitrability because: (1) the conflict between the mandatory portion of the statute and the agreement will only arise if ths arbitrator makes a factual finding (a willful or knowing violation) that relates to the merits of the dispute; and (2) if the arbitrator finds a violation of the statute that is not

willful or knowing, the discretionary award of multiple damages may or may not be waivable under Massachusetts law.  In the absence of a question of arbitrability, the district court erred in ordering that the multiple damages provision be severed from the arbitration agreement.

## C.  Statute of Limitations

### 1.  The Question of Arbitrability

Although a four-year statute of limitations applies to Chapter 93A claims under Massachusetts General Laws chapter 260, § 5A, the arbitration agreement provides: "YOU MUST CONTACT US WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE . . . OR YOU WAIVE THE RIGHT TO PURSUE A CLAIM BASED UPON SUCH EVENT, FACTS OR DISPUTE."  An apparent conflict therefore arises from the text of these provisions.[8]

In Kristian, as just noted, when we faced a similar conflict between an explicit statutory time limit and the arbitration agreement's one-year limitation, we concluded that no question of arbitrability was posed because the question of tolling required an examination of facts relating to the merits of the

---

[8] We note that Comcast renews its argument that the one-year provision in the arbitration agreement merely imposes a notice obligation on customers rather than a deadline for filing claims and therefore does not conflict with the statutory time limit. Our rejection of this argument in Kristian, 446 F.3d at 43, is controlling here.

dispute – a responsibility that belongs to the arbitrator. Kristian, 446 F.3d at 44. Comcast suggests that there are equivalent factual disputes in this case regarding when Anderson discovered that he was being overcharged and whether Comcast fraudulently concealed the charges that might eliminate the conflict by bringing him within the agreement's one-year statute of limitations.

This argument is unpersuasive. Anderson alleges that he returned his cable box to Comcast in 2002 but did not file suit until 2005. Anderson's complaint can only be read as an acknowledgment that he did not comply with the arbitration agreement's one-year notice of claim provision. The portions of Anderson's complaint on which Comcast relies in attempting to establish a factual dispute do not purport to make a tolling argument and Comcast cannot impose one on Anderson for its own purposes. We therefore agree that Anderson has established a direct conflict between the statutory provision and the agreement.

In the face of this direct conflict, we next make the preliminary waivability inquiry, as we did in Kristian, id. at 46-47 & n.15, i.e., we assess whether there is ambiguity on the question whether the statute of limitations can be contractually shortened. If there is ambiguity, the waivability question must be determined by the arbitrator in the first instance. For the reasons that we explain more fully below, we find that there is not

such ambiguity and we therefore conclude that this conflict between the arbitration agreement and the statute of limitations raises a question of arbitrability.

2. Waivability

Seeking to convince us that the limitations period that applies to Chapter 93A claims can be contractually shortened, Comcast points out that Massachusetts permits the reduction of four-year statutes of limitation to one year in certain contexts (e.g., sale and lease contracts under the provisions of the Massachusetts Uniform Commercial Code, ("MUCC"), Mass. Gen. Laws ch. 106, §§ 2-725(1), 2A-506(1)). In addition, it notes that we have previously recognized this authority in the context of a claim brought under Chapter 93A, § 11. See Hays v. Mobil Oil Corp., 930 F.2d 96, 100 (1st Cir. 1991) ("[A] one-year contractual limitations period, although brief, is valid and enforceable."). Section 11 allows "[a]ny person who engages in the conduct of any trade or commerce" to bring suit for unfair trade practices. Mass. Gen. Laws ch. 93A, § 11. It is thus the commercial analog to the consumer remedy provided by Chapter 93A, § 9.

Anderson seeks to distinguish between the MUCC's allowance of a truncated statute of limitations and Hays on the one hand, and consumer claims on the other, by pointing out that the MUCC provisions apply only to contracts for sale and defaults under a lease and Hays involved a transaction between commercial parties.

The distinction between commercial and consumer claims is important in many contexts. Indeed, § 9 was adopted in 1969 to provide an effective private remedy to consumers, see Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 775-77 (Mass. 1975); § 11 was adopted in 1972, in part to eliminate anticompetitive activity, see Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 152-53 (Mass. App. Ct. 1979). Given their different origins and purposes, what is waivable under one section might not be waivable under the other.

Chapter 93A does not itself contain a statute of limitations provision. Instead, the four-year period is specified in Massachusetts General Laws Chapter 260, § 5A, which creates a four-year statute of limitations for "[a]ctions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A." This provision was enacted in 1975, several years after both § 9 and § 11 were adopted. Chapter 93A claims such as Anderson's were originally subject to a two-year statute of limitations, which was extended to three years in 1973 before § 5A finally extended it to four years in 1975. See Baldassari v. Pub. Fin. Trust, 337 N.E.2d 701, 708 (Mass. 1975). The Massachusetts courts have interpreted the enactment of § 5A as part of a broader legislative scheme to "remedy the imbalance which exists primarily because of a lack of parity in bargaining power between the consumer and the provider of consumer goods and services." Mahoney v. Baldwin, 543 N.E.2d 435,

-23-

437 (Mass. App. Ct. 1989). The progressive lengthening of the statute of limitations, and the statutory language emphasizing the centrality of consumer protection, strongly suggest that the Massachusetts legislature did not intend this limitations period to be shortened by contract.

In addressing the waivability of statutory remedies under § 11, the Massachusetts Supreme Judicial Court stated in dicta that it "ordinarily would not effectuate a consumer's waiver of rights under Chapter 93A." Canal Elec. Co. v. Westinghouse Elec. Corp., 548 N.E.2d 182, 187 (Mass. 1990). When we assessed the waivability of the discretionary multiple damages remedy under the state antitrust statute in Kristian, 446 F.3d at 49-50, we characterized this language from Canal as "hinting that waiver of statutory remedies will not be allowed in situations involving a consumer plaintiff and/or antitrust claims," id. at 50. However, because the statutory remedy at issue in that analysis was discretionary, we concluded that "Massachusetts law on [the] question of waiver [was] ambiguous at best." Id. Here, where the progression of the law suggests that the Massachusetts legislature was concerned that a longer statute of limitations was required to allow consumers to effectuate their private cause of action under Chapter 93A, we find no such ambiguity.

Our Hays case is readily distinguishable from the instant case both because it involved a contract between commercial

parties, and also because the court in that case never mentioned the applicability of the four-year statute of limitations arising from § 5A. Moreover, unlike a discretionary damages remedy provided by statute, a statute of limitations often determines whether the consumer can seek any remedy at all. If that statute of limitations can be reduced from four years to one by agreement, the consumer loses a protection that is basic to all other consumer remedies. Given the language of the Supreme Judicial Court in Canal, and the importance accorded to the four-year statute of limitations for consumers by the legislature, we conclude that this four-year statute of limitations was not waivable by Anderson in his agreement with Comcast. The one-year statute of limitations in the agreement is thus incompatible with his statutory rights under Chapter 93A.

3. Severance

This unwaivable conflict between the statute and the arbitration agreement precludes enforcement of the agreement only if the problematic provision cannot be severed from it. See Kristian, 446 F.3d at 48. The dispute resolution section of the arbitration agreement makes clear that the limitations period is severable:

> If any portion of . . . this dispute resolution section[] is determined to be illegal or unenforceable, then that provision may be deleted or modified and the remainder of . . . this dispute resolution section[] shall be given full force and effect.

-25-

Severing the one-year limitation provision – as the agreement allows us to do – preserves the viability of the arbitral forum. Put another way, arbitration can go forward, subject to the four-year statute of limitations.

## IV.

In his cross-appeal, Anderson also urges us to find the arbitration agreement unconscionable and therefore unenforceable as to both his statutory and common law claims. Anderson's primary unconscionability argument is inextricably bound to his vindication of statutory rights argument. That is, he argues that the conflict between numerous provisions of the agreement and Chapter 93A, and its related statute of limitations, demonstrates the agreement's one-sided nature and Comcast's determination to extinguish the procedural and substantive rights of its customers.

We must reject this argument because of its faulty premise. We have found a direct, unwaivable conflict only between the four-year statute of limitations for consumer claims related to Chapter 93A and the one-year limitation provision of the arbitration agreement. With its severance provision, the arbitration agreement itself anticipated such a possible conflict and explicitly stated that arbitration should go forward without the offending term. The district court found the prohibition against attorney's fees unenforceable in the arbitral forum. Comcast did not appeal that determination. For the reasons stated

-26-

above, there is uncertainty whether the class action and multiple damages bars of the arbitration agreement will be enforceable or even implicated in the arbitration proceedings. Under these circumstances, there is no basis for finding the arbitration agreement unconscionable.

To the extent that Anderson presents an unconscionability argument under Massachusetts law that is distinct from his vindication of statutory rights argument, we find that argument so undeveloped as to be waived. See United States v. Rosario-Peralta, 199 F.3d 552, 563 n.4 (1st Cir. 1999).

**V.**

In summary, we make the following rulings. On Comcast's appeal (docket #06-2165), we vacate that portion of the order declaring the class action bar of the arbitration agreement invalid and severing it from the arbitration agreement; and we vacate that portion of the order declaring the multiple damages provision of the arbitration agreement invalid and severing it from the arbitration agreement. On Anderson's cross-appeal (docket #06-2203), we vacate the order requiring the arbitrator to decide the enforceability of the arbitration agreement's one-year limitation provision; arbitration can only go forward with that provision severed from the agreement. We affirm the district court's order granting Comcast's motion to compel arbitration. We remand for

further proceedings not inconsistent with this opinion. The parties shall bear their own costs.

**<u>So ordered.</u>**